

FILED

Aug 01 2017, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Evan K. Hammond
Office of the Grant County Public
Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Angela Sanchez
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Aaron L. Fansler, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 1, 2017 <br><br> Court of Appeals Case No. <br> 27A02-1610-CR-2325 <br><br> Appeal from the Grant Circuit Court <br><br> The Honorable Mark E. Spitzer, Judge <br><br> Trial Court Cause No. <br> 27C01-1506-F3-15 |

**Mathias, Judge.**

[1] Aaron L. Fansler ("Fansler") was convicted after a jury trial in Grant Circuit Court of dealing heroin and other drug crimes, and was sentenced to ten years in the Department of Correction. Fansler now appeals the admission of two

self-incriminating statements and the exercise of the court's sentencing discretion.

[2] We affirm.

## Facts and Procedural Posture

[3] On June 18, 2015, Fansler received a request over a social media network to connect with a user who appeared to be a twenty-one-year-old woman named "Kenzie Allen." "Kenzie Allen" was in fact an unsworn member of a local law-enforcement drug-crime task force conducting an undercover investigation. Fansler accepted the request. By private messages exchanged over the network, and then by text messages over their cell phones, "Kenzie" invited Fansler to a room at a local hotel. The hotel owner was friendly with police and would allow them the use of a room for undercover operations without charge. "Kenzie" wanted to buy two "points," or tenths of a gram, of heroin from Fansler.

[4] On the evening of June 19, 2015, lured by the prospects of sex, companionship, and a drug sale, Fansler went to the hotel room indicated by "Kenzie." There, he found "Kenzie's brother," a Grant County sheriff's deputy and a member of the same drug-crime task force. "Kenzie" was not in the hotel room, but Fansler was assured she would arrive soon. As Fansler stepped outside the hotel to wait, he was arrested by waiting law enforcement officers and taken back to "Kenzie's" hotel room. Once inside, Fansler was interrogated and searched. Fansler had brought with him more than seven grams net weight of

heroin, more than a dozen clonazepam and oxycodone pills, numerous empty plastic bags, a digital scale, a hypodermic syringe, a tourniquet, and more than two hundred dollars cash.

[5] On June 24, 2015, Fansler was charged by information in Grant Circuit Court with Level 3 possession of heroin with intent to deliver, Level 6 felony possession of heroin, Class A misdemeanor possession of a controlled substance, and Class A misdemeanor possession of paraphernalia. Fansler's case was tried to a Grant County jury over two days, August 1 and August 2, 2016. Fansler admitted the possession but denied the intent to deliver, and raised the affirmative defense of entrapment. However, the jury was not persuaded and found him guilty as charged on all four counts.

[6] At a sentencing hearing on September 9, 2016, Fansler was sentenced to a thirteen-year term on the dealing charge, ten years executed in the Department of Correction and three years suspended. Fansler was further sentenced to concurrent terms of two years executed for possession of heroin, one year executed for possession of a controlled substance, and one year executed for possession of paraphernalia. This appeal timely followed.

## Discussion and Decision

[7] Fansler presents two issues for our review: whether the trial court abused its discretion by admitting two self-incriminating statements made by Fansler to law enforcement officers after being Mirandized in the hotel room, over Fansler's objection on the basis of Indiana Evidence Rule 617; and whether the

sentencing court abused its discretion by failing to find a significant mitigating circumstance clearly supported by the record and advanced for consideration.

## I. Admission of Fansler's Statements Was Harmless Error

[8]     At trial, a witness for the State testified to two self-incriminating statements made by Fansler in the hotel room. The first was related as follows:

> [State:]         What questions were asked of [Fansler] after [the warning required by] *Miranda* [*v. Arizona*, 384 U.S. 436 (1966)] was read to him?
>
> [Defense objection overruled.]
>
> [Witness:]   I asked him where the two points of heroin were.[1]
>
> [State:]        And what was his response?
>
> [Witness:]   Stated that they should be in the baggies.

Tr. Vol. I, p. 147. Two packages of heroin weighing two tenths of a gram net each were recovered from a cigarette pack carried by Fansler.

[9]     From the same cigarette pack, law enforcement recovered "another clear plastic baggy that contained a large amount of gray compressed powder[,]" eventually determined to be more heroin. *Id.* at 149. In connection with this larger package, Fansler's second statement was related by the same witness as follows:

---

[1] Two tenths of a gram, or "a couple points," was the amount of heroin Fansler had agreed to sell "Kenzie." Ex. Vol., State's Ex. 2 (text messages); Tr. Vol. I, pp. 73, 77-78, 211-12.

| [State:] | Did you ask [Fansler] about the large compressed powder when you found it? |
|---|---|
| [Witness:] | I did. |
| [State:] | What did you ask him? |
| [Witness:] | I asked him why he didn't tell us about that item being in the cigarettes in his possession. |
| [State:] | And what did he say? |
| [Witness:] | He didn't want to get caught with it. He didn't want to go jail for it. |

*Id.* at 152.

[10]  On appeal, Fansler claims the trial court reversibly erred by admitting these statements contrary to the mandate of Indiana Evidence Rule 617. We review challenges to admission of evidence at trial for prejudicial abuse of the trial court's discretion. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). A trial court abuses its discretion by ruling in a way clearly against the logic and effect of the facts and circumstances before it, or by misinterpreting the law. *Id.* In reviewing whether an abuse of discretion was prejudicial, we assess the probable impact of the improperly admitted evidence on the jury in light of the properly admitted evidence. *Id.* If the conviction is supported by independent, properly admitted evidence of guilt such that there is little likelihood the improperly admitted evidence contributed to the verdict, the error is harmless. *Blount v. State*, 22 N.E.3d 559, 564 (Ind. 2014).

[11] Indiana Evidence Rule 617 provides that, "[i]n a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved, and is available at trial, except upon clear and convincing proof" that one of several exceptions applies. Ind. Evidence Rule 617(a). One such exception is for statements made as "part of a routine processing or 'booking' of the person[.]" *Id.* at (a)(1). A "Place of Detention" is "a jail, law enforcement agency station house, or any other stationary or mobile building owned or operated by a law enforcement agency at which persons are detained in connection with criminal investigations." *Id.* at (b).

[12] Here, no electronic recording of Fansler's interrogation in the hotel was available at trial. Fansler argues that the two self-incriminating statements were made in the course of a custodial interrogation, that they were not made in the course of routine booking or processing, that the hotel room was a place of detention, and that therefore the rule required exclusion of the statements. The State concedes that the statements were made in the course of a custodial interrogation, but argues that they were made in the course of routine booking and that the hotel room was not a place of detention. The trial court ruled that the hotel room was not a place of detention because it was "operat[ed]" by the hotel, and that the statements were admissible in any event under the booking exception, analogizing the questioning of Fansler to a search incident to arrest. Appellant's App. p. 62.

[13]    We are not inclined to read the booking exception as broadly, nor the place-of-detention requirement as narrowly, as the State urges. Rule 617 is of recent vintage and has never been construed by our supreme court. Only one published decision of this court has interpreted the "place of detention" requirement, *Steele v. State*, 975 N.E.2d 430, 431 (Ind. Ct. App. 2012), *trans. denied*, and none of our published decisions have construed the booking exception. In *Steele*, without exhaustive analysis, we held that a gas station to which a police officer had transported a drunk-driving arrestee for field sobriety testing was not a place of detention. *Id.* at 432.

[14]    In this case, the hotel room was operated by the police and was used to detain Fansler in connection with a criminal investigation. The drug-crime task force investigating Fansler had used the hotel "a couple times" for other investigations in the year preceding Fansler's arrest. Tr. p. 49. The owner of the hotel was "police friendly" and allowed police use of his rooms without charge. *Id.* The police had the opportunity to set up the location and prepare it for Fansler's arrival, and lay in wait for him there. The police thus had possession and control over the room, plus ample opportunity to prepare the room for the custodial interrogation police knew or anticipated would result from Fansler's arrest there. Under these circumstances, the hotel room was a place of detention.

[15]    As for the booking exception, the trial court analogized it to searches incident to arrest, an exception to the Fourth Amendment's warrant requirement, but we think the language of Rule 617 plainly evokes the formal, administrative setting

of the routine-booking exception to the warning requirement of *Miranda v. Arizona*, 384 U.S. 436 (1966), and related Fourth Amendment contexts. *See, e.g., Maryland v. King*, 133 S.Ct. 1958, 1971 (2013) (holding buccal DNA swabs for felony arrestees reasonable as part of routine booking procedure); *Pennsylvania v. Muniz*, 496 U.S. 582, 600–02 (1990) (plur.) (holding admission of suspect's unwarned statements giving biographical information not in violation of *Miranda* because within a "routine booking question" exception for answers to questions reasonably related to administrative, record-keeping purposes and to completion of booking or pretrial services). These doctrines contemplate "routine administrative procedures at a police station house incident to booking and jailing the suspect" and "formal[] process[ing] into police custody." *King*, 133 S.Ct. at 1971. The same setting is contemplated by, for example, "the public records exception [to the rule against hearsay] permit[ting] admission of police records created in connection with routine booking procedures." *Fowler v. State*, 929 N.E.2d 875, 879 (Ind. Ct. App. 2010) (noting as examples fingerprint cards, mugshots, and booking cards recording biographical information), *trans. denied*.

[16]     In this light, we conclude that, irrespective of whether the precise focus should be on the nature of the questions asked (administrative or investigative) or on the character of the setting (formal or informal), Fansler's answers given minutes after his arrest in an undercover drug operation to questions of the type "Where is the heroin?" were not statements made in the course of routine processing or booking.

[17] We agree with the State, however, that admission of the challenged statements was entirely harmless. We note that Fansler has not undertaken to demonstrate prejudice from admission of the statements; his brief argues only that admission was erroneous. *See* Ind. Appellate Rule 66(A) (harmless error no basis for relief on appeal).

[18] The challenged statements were self-incriminating only to the extent that, by them, Fansler admitted to possessing the heroin. Neither statement was more than minimally probative of Fansler's intent to deliver the heroin, nor of his predisposition to deliver the heroin, the State's rebuttal to his entrapment defense. *See Scott v. State*, 772 N.E.2d 473, 474–75 (Ind. Ct. App. 2002), *trans. denied*. However, Fansler himself admitted possessing the heroin in open court before the jury (and, indeed, could have hardly denied it):

> [Counsel:]   No doubt about it though, you possessed those items [recovered by law enforcement at the hotel room] on your person, correct?
>
> [Fansler:]   Yes I did.
>
> [Counsel:]   And you're freely admitting that here today with this jury?
>
> [Fansler:]   Yes I am.
>
> [Counsel:]   But absolutely your intent was not to give or sell ["Kenzie"] anything?
>
> [Fansler:]   No it was not.

Tr. Vol. I, p. 205; *see also id.* at 224-25 (Fansler under cross-examination admitting possession but denying intent to deliver).

[19] To the minimal extent that the challenged statements may have been probative of Fansler's intent or predisposition to deliver the heroin, those facts were so clearly proved by Fansler's and "Kenzie's" text messages, and Fansler's execution of the arrangements made thereby, that there is no likelihood the challenged statements contributed to the jury's verdict as to these issues:

["Kenzie":] Tomorrow I'm trying to get to Indy to get something but not sure it's gonna happen ▯ But maybe Saturday if I don't have to work [. . .]

[Fansler:] but whats up wit indy y u going there???

["Kenzie":] I got a guy I'm suppose to get some shit from but he will probably try to screw me over again lol [. . .]

[Fansler:] what u going up there ta grab[?] might b able ta help u out nstead wasting gas time n money going all way up there

["Kenzie":] I need to get a couple points

[Fansler:] A cpl points . . . . all way ta indy for that . . . . thats crazy what u paying for em up there[?]

["Kenzie":] Yeah tell me I hate driving all the way up there I pay dude 35 but he cut me a deal

[Fansler:] 35 a p . . . . . geeeez that's crazy i let mine go for 30 [. . .]

["Kenzie":] I'll pay 30 easy is it good shit?

> [Fansler:] Yea gotta give me a min ta get going but yea uts good
>
> ["Kenzie":] Yeah cool I'm running errands I'll hit u up in a few maybe an hour if that's good with you?
>
> [Fansler:] Yea just lmk ["let me know"] when,ever ur done

Ex. Vol., State's Ex. 2 (*sic passim*). This exchange unambiguously showed both Fansler's predisposition ("i let mine go for 30") and intent ("Yea gotta give me a min ta get going but yea uts good") to deliver the heroin from Fansler's own mouth. *Id.* The two challenged statements, to the extent they speak to these issues at all, cannot have contributed to the jury's decision.

[20] Though the challenged statements were improperly admitted, in light of Fansler's admissions at trial, the generally uncontested nature of his possessing the heroin, and the wealth of direct and circumstantial evidence from which the jury could infer intent and predisposition to deliver, there is no likelihood that the challenged statements contributed to the verdict. The error was therefore harmless and does not entitle Fansler to relief on appeal.

## II. The Sentencing Court Did Not Abuse Its Discretion

[21] At Fansler's September 9, 2016, sentencing hearing, the court found as follows:

> Certainly the aggravating circumstance of your criminal history . . . is a big one, Mr. Fansler. As well as the fact that you were on probation at the time the crime was . . . committed. I'll accept the mitigator that incarceration would be a hardship on your family. I'll accept the mitigator that . . . the offense didn't cause serious harm to another person given the fact that it was a sting

operation . . . . [I]f the victim causing the offense is a mitigator, it's a mild one, . . . at best. . . . Perhaps you had . . . a substance . . . dependency, but . . . you also were a dealer and . . . I think all the circumstances indicate that. . . . So I feel that the aggravating factors do outweigh the mitigating factors . . . .

Tr. Vol. II, pp. 6-7.

[22]     In its judgment order, the court restated its findings as follows:

For its sentencing statement, the court [*sic*] finds the following aggravating circumstances:

1.  The Defendant has a lengthy history of criminal and juvenile offenses.
2.  The Defendant was on probation for a felony offense when he committed this offense.

The Court [*sic*] finds the following mitigating factors:

1.  Incarceration may be a hardship on the dependents of the Defendant.
2.  The crime in question did not cause serious harm.

In considering the aggravating and mitigating circumstances, the Court [*sic*] determines the circumstances justify the imposition of an enhanced sentence.[2]

Appellant's App. p. 98.

---

[2] That is, a sentence higher than the nine-year advisory sentence for Level 3 felonies. Ind. Code § 35-50-2-5(b).

[23] On appeal, Fansler claims the court "failed to consider that the victim of the crime induced or facilitated the offense" in mitigation of his sentence. Appellant's Br. at 12; *see* Ind. Code § 35-38-1-7.1(b)(3) (court may weigh same in mitigation). We may review a sentence for abuse of the sentencing court's discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions drawn therefrom." *Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016), *trans. denied.*

[24] Claims for "failure to 'properly weigh'" aggravating and mitigating factors lie beyond such review, *Anglemyer*, 868 N.E.2d at 491, but the court abuses its discretion by failing to find "significant" mitigators, *id.* at 493, that are "clearly supported by the record and advanced for consideration[.]" *Id.* at 491. It was Fansler's burden to establish that the mitigating evidence was both significant and clearly supported by the record. *Id.* at 493. Remand for resentencing is an appropriate remedy if "we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, "the relative weight or value assignable to [mitigators] properly found, or [to] those that should have been found, is not subject" to our review. *Green v. State*, 65 N.E.3d 620, 636 (Ind. Ct. App. 2016).

[25] Here, the court noted from the bench its view of Fansler's proffered mitigator: "[I]f the victim causing the offense is a mitigator, it's a mild one, . . . at best."

Tr. Vol. II, p. 6. Though the court's judgment order did not refer to this mitigator in terms, it was apparently given consideration under the rubric of "not caus[ing] serious harm." Appellant's App. p. 98; *see* Tr. Vol. II, p. 6 (trial court "accept[ed] the mitigator that . . . the offense didn't cause serious harm to another person *given the fact that it was a sting operation*" (emphasis added) and fact that investigation was "sting operation" identical to Fansler's proffered mitigator). In any event, the trial court clearly heard and considered Fansler's proffered mitigator, as Fansler himself concedes. Appellant's Br. at 12. The court simply did not think the mitigator was entitled to any great weight. Tr. Vol. II, p. 6 ("[I]t's a mild one, . . . at best."). We will not revisit that determination here. There was no abuse of discretion.

## Conclusion

[26] Though admission at trial of Fansler's two self-incriminating statements was error, it was harmless. The sentencing court did not abuse its discretion by failing to find Fansler's proffered mitigator. The judgment against Fansler is therefore affirmed.

[27] Affirmed.

Kirsch, J., and Altice, J., concur.