



FILED

Jun 21 2018, 10:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE

# Indiana Supreme Court

Supreme Court Case No. 27S02-1710-CR-672

## Aaron L. Fansler

*Appellant (Defendant below)*

−v−

## State of Indiana

*Appellee (Plaintiff below).*

---

Argued: November 21, 2017 | Decided: June 21, 2018

Appeal from the Grant Circuit Court, No. 27C01-1506-F3-15
The Honorable Mark E. Spitzer, Judge.

On Petition to Transfer from the Indiana Court of Appeals,
No. 27A02-1610-CR-2325

---

**Opinion by Justice David**

Chief Justice Rush, Justice Massa, Justice Slaughter, and Justice Goff concur.

**David, Justice**

In this case we address whether, under Indiana Evidence Rule 617, admission of incriminating statements made in a motel room[1] during the course of a custodial interrogation required the State to make available an electronic recording of those statements at trial. We find that the trial court did not err in admitting the defendant's statements without such a recording because the motel room in question was not a "place a detention," as defined by the rule.

## Facts and Procedural History

On June 18, 2015, Aaron Fansler ("Fansler") accepted a Facebook friend request to connect with a user who appeared to be a twenty-one-year-old woman named "Kenzie Allen" ("Kenzie"). Kenzie was not a real person; a fake Facebook account using that name was set up by a drug task force team investigating drug dealing in Grant County. Communicating first through social media, and then through private text messages, Fansler agreed to sell two-tenths of a gram of heroin to Kenzie at the Hart Motel, located in Marion, Indiana.

The next day, lured by the prospects of sexual intercourse and a drug sale, Fansler visited Kenzie's motel room where he was greeted by Detective Wesley McCorkle, a member of the Joint Effort Against Narcotics ("JEAN") Team. Detective McCorkle identified himself as Kenzie's brother and assured Fansler that Kenzie had just stepped out to purchase cigarettes and would return soon. Fansler, who appeared visibly nervous, decided to wait for Kenzie outside the room. As Fansler walked along the outside of the motel, a second officer, Detective Sergeant John Kauffman, approached Fansler and arrested him. Fansler was

---

[1] The Court of Appeals decision and the State's Petition to Transfer both state that the custodial interrogation occurred in a hotel room. Upon review of the record, we determined that the facility operated as a motel, rather than a hotel. The distinction does not change the analysis or outcome in this decision, but for the sake of accuracy, we will henceforth refer to the location of the custodial interrogation as a motel room.

brought back into the motel room, where officers noticed a syringe protruding from an open flap in his cargo pants. Officers retrieved the syringe and, upon searching Fansler further, they recovered over a dozen clonazepam and oxycodone pills, numerous empty plastic bags, a scale, a tourniquet, a hypodermic needle, two cigarette packs, and more than $250 in cash.

After Fansler's pockets were emptied and his *Miranda* warnings were read, Fansler made two incriminating statements. The first statement came in response to officers' questions about the drugs he promised to sell. When officers asked Fansler "where the two points of heroin were,"[2] he told them that the "points" should be in the baggies. Tr. Vol. I at 147. Officers then searched inside one of the cigarette packs and recovered two small ziplock baggies containing a substance that later tested positive for heroin. Within that same cigarette pack, officers found "another clear baggy that contained a large amount of gray compressed powder." Tr. Vol. I at 149. That substance also later tested positive for heroin. When officers asked Fansler "why he didn't tell [them] about [the large amount of compressed powder] being in the cigarettes in his possession," Fansler made a second incriminating statement, claiming that he did not want to "get caught with it" and "go to jail for it." Tr. Vol. I at 152.

On June 24, 2015, Fansler was charged with possession of heroin with intent to deliver, felony possession of heroin, misdemeanor possession of a controlled substance, and misdemeanor possession of paraphernalia. Fansler filed a motion to suppress his incriminating statements, which the trial court denied after holding a preliminary hearing.

A jury trial was held on August 1-2, 2016. Fansler admitted possession, but denied intent to deliver and raised an affirmative entrapment defense. During the State's case in chief, Detective Sergeant Kauffman testified as to Fansler's two self-incriminating statements—that the two points he promised to sell to Kenzie were in the baggies and that he didn't tell officers about the large amount of compressed powder in his possession

---

[2] A point is one tenth of a gram of heroin. Fansler had agreed to sell "Kenzie" two points.

because he didn't want to go to jail for it. Ultimately, the jury found Fansler guilty on all four counts.

On September 9, 2016, Fansler was sentenced to thirteen years for dealing, with ten years executed in the Department of Correction and three years suspended. He was also sentenced to concurrent terms of two years executed for possession of heroin, one year executed for possession of a controlled substance, and one year executed for possession of paraphernalia.

Fansler appealed, alleging the two post-*Miranda* self-incriminating statements he made to officers should not have been admitted into evidence because no electronic recording of the statements was made available at trial, as required by Indiana Evidence Rule 617. Fansler further alleged that the sentencing court "failed to consider that the victim of the crime induced or facilitated the offense" as a mitigation factor in his sentence. Appellant's Br. at 12.

In a unanimous published opinion, the Court of Appeals upheld the trial court's conviction, finding that although the trial court erred in admitting Fansler's statements without an electronic recording, any error committed was harmless because Fansler's own admissions at trial and the generally uncontested nature of his possession of heroin eliminated the likelihood that the challenged statements contributed to the verdict. *Fansler v. State*, 81 N.E.3d 671, 678 (Ind. Ct. App. 2017). As to the sentencing issue, the Court of Appeals found that the trial court did not abuse its discretion in not considering the proposed mitigating factor. *Id.*

The State sought transfer, which we granted, thereby vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Challenges to the admission of evidence are ordinarily reviewed for an abuse of trial court discretion. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). In those instances, we will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v.*

*State*, 678 N.E.2d 386, 390 (Ind. 1997).  However, when a trial court's evidentiary ruling rests upon the proper interpretation of a statute or rule of evidence, it inherently presents a question of law, which we review de novo.  *Patchett v. Lee*, 60 N.E.3d 1025, 1028 (Ind. 2016).

# Discussion and Decision

Although the Court of Appeals affirmed Fansler's conviction, the State challenges the Court of Appeals' determination that the trial court erred in admitting Fansler's incriminating motel room statements without an electronic recording.  Fansler did not file a response to the State's petition, but made his opposition clear at oral argument; he argued that the Court of Appeals was correct in finding that the trial court erred and that the booking exception did not apply, but disputed whether the harmless error exception saved the statements from exclusion.

Since our Court has yet to construe Rule 617, we elect to address whether the trial court erred in admitting Fansler's incriminating statements without an electronic recording.  As for the other issue the Court of Appeals addressed—whether the trial court correctly heard and considered Fansler's proffered mitigator—we summarily affirm.

## I.  The trial court did not err in admitting Fansler's statements.

Indiana Evidence Rule 617 is not a constitutional requirement or a prophylactic rule meant to enforce the Constitution; rather, it is a rule of judicial administration.  Thus, assessing the admissibility of Fansler's statements requires only examining the rule for intent.  In doing so, our goal is to determine whether it applies to the circumstances before us.  We find that it does not.

Rule 617 heightens the requirements for admissibility of statements in certain circumstances by specifically providing that, "[i]n a felony prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the

person unless an Electronic Recording of the statement was made, preserved, and is available at trial . . . ." Ind. Evidence Rule 617(a). Subsection (b) further defines several terms found in subsection (a). For example, an "electronic recording" is defined as "an audio-video recording that includes at least not only the visible images of the person being interviewed but also the voices of said person and the interrogating officers." Ind. Evidence Rule 617 (b). A "custodial interrogation" is defined as "an interview conducted by law enforcement during which a reasonable person would consider himself or herself to be in custody." Id.

The State did not make available at trial an electronic recording of Fansler's statements and concedes that the statements were made in the course of a custodial interrogation. Indeed, a review of the record confirms that any reasonable person in Fansler's position would have considered himself in custody. Thus, whether Rule 617's electronic recording mandate for admission of statements applies here turns on whether the motel room used to conduct the custodial interrogation was a "place of detention."

The rule is straightforward about what constitutes a place of detention. A place of detention is defined in subsection (b) as a "jail, law enforcement agency station house, or any other stationary or mobile building owned or operated by a law enforcement agency at which persons are detained in connection with criminal investigations." Ind. Evidence Rule 617(b). We can be sure that the motel room used to interrogate Fansler was neither a jail, nor a law enforcement agency station house. And it is also clear that law enforcement owned no part of the motel, including the room where Fansler's custodial interrogation took place. The Hart Motel was owned by a man known to officers as "Bobby," who was friendly with police and on occasion allowed police to conduct operations, free of charge. But whether law enforcement *operated* the motel room in a manner that transformed it into a place of detention is less obvious.

The rule, unfortunately, does not define what it means to operate a space in a manner that transforms it into a place of detention. For that, we turn to the ordinary use of the word "operate." "Operate" has several definitions, but the one we find most applicable here defines it as

"control[ling] or direct[ing] the functioning of."  Webster's II New College Dictionary (1st ed. 1995).  In other words, we must determine whether law enforcement controlled or directed the functioning of the motel room *as a place of detention*.  To guide our lower courts, we've identified several factors that we think are useful in this inquiry.  Courts should assess: 1) the control that law enforcement has over the premises, 2) the frequency of use to conduct custodial interrogations, and 3) the purpose for which law enforcement uses the space.

Fansler sheds some light on the degree of control law enforcement exercised.  He specifically argues that, unlike in *Steele v. State*, 975 N.E.2d 430, 432 (Ind. Ct. App. 2012), where our Court of Appeals found that a gas station used by law enforcement to question a defendant after an arrest was not a place of detention, the significant control that law enforcement wielded over the motel room here—the number of times law enforcement used the space in the past and the autonomy given by the owner to modify the space for law enforcement needs—transformed it into a space operated by law enforcement as a place of detention.  Fansler also suggests that because law enforcement chose the location, lured him there, and waited for several hours before his arrival, we should consider that they had ample time to equip the room with recording devices that would capture the custodial interrogation.  But Fansler overlooks several facts regarding control that cut against his argument.  For instance, the room was controlled by law enforcement only in the sense that officers temporally used it to pose as drug buyers.  There is also no indication that the room was significantly altered or that the room was set aside for the exclusive use of law enforcement; presumably, the room continued operating as a motel room after officers cleared out.  We find that the control law enforcement wielded over the space was limited and, at all times, dictated by the motel's owner.

As for frequency of use, police did not exercise the type of long-term control that is ordinarily associated with operating a space.  Police use of the room was sporadic by any measure; they used the room in only three sting operations within the past year.  Although no bright line rule in terms of frequency will dictate when a space comes to be operated by law enforcement, we think three times during the course of a year is too few.

Finally, and most importantly, we find that the primary use of the motel room was surveillance, not interrogation. Law enforcement set up shop in the motel room because they believed Fansler was willing to carry out a drug transaction in that environment. A motel room also gave officers a controlled space to safely execute an arrest and search the suspect for contraband. Law enforcement's post-arrest questions were of the nature expected during a search for drugs. They wanted Fansler to tell them where he had hidden the heroin. When officers found more contraband than expected, they asked Fansler why he withheld that information from them. These incidental questions are not what Rule 617 intended law enforcement to capture on video. A "place of detention" describes a more formal setting where interrogations are routinely carried out in a systematic manner. While a jail or station house ordinarily serve this purpose, a temporary mobile command post where police have established a presence to handle an increase in processing needs (perhaps due to a large sporting event) may serve as the functional equivalent of a station house. But the manner in which the space at issue was used does not support a finding that it became the functional equivalent of a station house. Although a custodial interrogation occurred here, as often does during arrests, the primary use of the room was not to conduct custodial interrogations.

In sum, Fansler's argument suffers from the malady of over-reliance on a single factor: control of the room. While control over a space is certainly important in terms of assessing whether law enforcement operates it as a place of detention, Fansler overlooks that in this case the frequency of the motel room's use was sporadic and the primary purpose of law enforcement's control over the room was surveillance rather than interrogation. Under Rule 617, officers must equip facilities serving the functional equivalent of a station house with recording devices, but a motel room used sporadically to carry out a sting operation is simply not the type place the rule was meant to reach.

Accordingly, we find that the motel room, as used by law enforcement in this case, was not a place of detention. This is not to say that a motel room can't ever become a place of detention. Had the degree of control over the motel room, frequency of use, and the purpose of the use

indicated that law enforcement was operating the motel room as the functional equivalent of a station house, then perhaps we would have a different outcome. But in this case, the trial court did not err in admitting Fansler's incriminating statements without an electronic recording.

## II. We need not probe further into the harmless error and routine booking exceptions.

Because we determine that the trial court did not err in admitting Fansler's incriminating statements, we need not address whether the harmless error exception applies. Likewise, whether the statements were made as part of a routine processing or booking is moot.

## Conclusion

A motel room, as used by law enforcement in this case—to carry out an undercover investigation and to search a suspect incident to his arrest—is not a place of detention as defined by Indiana Evidence Rule 617. We find that the trial court did not err in admitting testimony about the statements Fansler made after being duly advised of his *Miranda* rights. Accordingly, we affirm the trial court's conviction.

Rush, C.J., and Massa, Slaughter, and Goff, JJ. concur.

ATTORNEY FOR APPELLANT
Evan K. Hammond
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Stephen R. Creason

Ian McLean
Angela Sanchez
Deputy Attorneys General
Indianapolis, Indiana