## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 17 2018, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James E. Ross, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | October 17, 2018 <br><br> Court of Appeals Case No. 18A-CR-897 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Michael Christofeno, Judge <br><br> Trial Court Cause No. 20C01-1702-MR-3 |

**Baker, Judge.**

[1] James E. Ross, Jr., appeals his convictions for two counts of Murder,[1] arguing that (1) the trial court improperly admitted crime scene and autopsy photographs when their prejudicial effect outweighed their probative value; and (2) the sentence imposed was inappropriate in light of the nature of the offenses and his character. Finding no error and that the sentence is not inappropriate, we affirm.

# Facts

[2] On September 16, 2016, Ross drove to Cheri Avery's duplex house in Elkhart. Avery lived downstairs, and her neighbors, Antonio and Anthony McClain, lived upstairs. Ross had a loaded pistol on his person that Avery noticed when she answered the door. Ross informed Avery that he did not want other people visiting her home and that there would be a "problem" if an individual named Cappo showed up. Tr. Vol. IV p. 56-58. Ross then left.

[3] Later, at roughly 3:00 p.m. that afternoon, Cappo arrived at Avery's house to collect some belongings. Shortly thereafter, at 3:30 p.m., Ross returned to Avery's house to discover that Cappo was there as well. Ross became upset and started yelling at Avery. Hearing the yells, Antonio and Anthony came downstairs to investigate the situation. Antonio was armed with a revolver on his waistband and Anthony was unarmed. Antonio asked Ross who he was and

---

[1] Ind. Code § 35-42-1-1.

why he was yelling at Avery. Ross either did not respond or told both men to mind their own business. *Id*. 157-58. The confrontation started to escalate, and more people got involved. Multiple witnesses were present and watched this scene unfold.

[4] Antonio eventually pulled out his gun but did not aim the gun at Ross. Ross responded by pointing his gun at Antonio and shooting him in the face. After watching Antonio collapse from his gunshot wound, Anthony raised his hands. Ross then shot Anthony in the face as well. Both died on the scene. Nearly all the bystanders fled the area.

[5] Ross did not flee. Rather, he stayed behind and called 911. Elkhart Police Sergeant Drew Neese and Lieutenant Karl Miller responded to the call and arrived at Avery's house to investigate. Ross admitted to shooting both Antonio and Anthony but claimed that he shot them in self-defense. Sergeant Neese confiscated Ross's weapon and took Ross into custody. Throughout the entire ordeal, Ross willingly worked with the police, provided them with information, answered questions, and even submitted to DNA testing.

[6] Ross has an extensive criminal history both as a juvenile and as an adult. He has been previously charged and convicted of misdemeanor theft, disorderly conduct, failure to stop after an accident, misdemeanor driving with a suspended license, and felony attempted murder. App. Vol. II p. 116-18. Additionally, he has been on and has violated probation multiple times. *Id*.

On February 23, 2017, the State charged Ross with two counts of murder. The jury trial began on February 5, 2018. Throughout the entirety of the trial, the State offered into evidence multiple crime scene and autopsy photographs that featured explicit images of Antonio and Anthony's bodies. Ross objected to the admission of those photos, claiming that their prejudicial effect outweighed their probative value. The trial court overruled all objections and admitted the photographs.

The jury found Ross guilty as charged. After weighing both aggravating and mitigating factors, the trial court ultimately sentenced Ross to two consecutive 65-year sentences for a total of 130 years in the Indiana Department of Correction. Ross now appeals.

# Discussion and Decision

Ross presents two arguments on appeal: (1) the trial court improperly admitted the crime scene and autopsy photographs because their prejudicial effect outweighed their probative value; and (2) the 130-year sentence is inappropriate in light of the nature of the offenses and his character.

# I. Admission of Evidence

We first address Ross's argument that the trial court improperly admitted the crime scene and autopsy photographs. Specifically, Ross argues that the State's photographs were both prejudicial and short on probative value because they

were duplicative, immaterial, and not necessary to prove any elements of the case. Throughout the trial, Ross maintained that he acted in self-defense, and he argues that these photographs confused the jury and distracted from the genuine issues.

[11] When there is a challenge to a trial court's admission of evidence, we will reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018).

[12] Indiana Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." In other words, even if particular evidence is probative and could assist a jury in reaching its decision, the trial court can still exclude the admission of said evidence if it believes that the evidence will prejudice one party for any of the aforementioned reasons.

[13] Ross claims that the photographs are not only highly prejudicial due to their graphic nature but that they are also without any relevance or probative value. Ross has already admitted to shooting both Anthony and Antonio, so he maintains that the only relevant evidence was evidence pertaining to whether he acted in self-defense. We find Ross's argument unavailing.

[14] First and foremost, evaluating whether an exhibit's probative value is substantially outweighed by the danger of unfair prejudice is a discretionary

task best performed by the trial court. *Dunlap v. State*, 761 N.E.2d 837, 842 (Ind. 2002).

[15]    Second, the fact that photographs depict gory, revolting, or inflammatory details of the crime is not a sufficient basis for reversal, unless they are without relevance to any material issue. *Perigo v. State*, 541 N.E.2d 936, 939 (Ind. 1989). Even gruesome and gory photographs with strong probative value are admissible where they help interpret the facts of the case for the jury. *Helsley v. State*, 809 N.E.2d 292, 296 (Ind. 2004). Though Ross believed the only issue during his trial should have been the issue of self-defense, he is incorrect. The State still had the burden to prove all elements of murder beyond a reasonable doubt. As such, the State's introduction of crime scene and autopsy photographs was integral to the State's case in describing the nature of the crime and the consequences of Ross's actions. Ross's claim that the gruesome photographs were inherently irrelevant to his criminal trial is unavailing.

[16]    Moreover, the State proffered the photographs of the crime scene and of the autopsy both to corroborate the testimony of its expert witness and to assist the jurors in evaluating the nature of Ross's criminal acts. Specifically, the expert witness referenced the photographs to describe the level of trauma Antonio and Anthony probably endured and the immediate effects of the close-range shots to their heads. Tr. Vol. IV p. 231-32. The expert witness repeatedly utilized the photographs to reconstruct the crime scene and to analyze the blood stain patterns to refute the notion that Ross was acting in self-defense. Tr. Vol. VI p. 177-87.  So, to Ross's main argument, even if the only issue before the jury was

whether Ross acted in self-defense, the photographs would still be relevant as applied to those claims.

[17] The State had valid reasons for introducing all the photographs despite their graphic nature, and Ross objected to them as he saw fit. The trial court clearly weighed the potential for prejudice in the photographs against their probative value and made a decision well within its discretion. We find that the trial court did not improperly admit the photographs over Ross's objections.

# II. Appropriateness

[18] We next address Ross's argument that the trial court inappropriately sentenced him to an aggregate term of 130 years in the Department of Correction. Indiana Appellate Rule 7(B) states that a "Court may revise a sentence . . . if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We consider a number of factors in determining whether a sentence is inappropriate, such as the culpability of the defendant, the severity of the crime, the damage done to others, and numerous other factors that arise in a given case. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Additionally, the defendant bears the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[19]    The maximum sentence possible for a murder conviction, which the trial court imposed in this case, is sixty-five years, and the minimum sentence is forty-five years. Ind. Code § 35-50-2-3. The advisory sentence is fifty-five years. *Id.*

[20]    First, as to the nature of the offenses, Ross shot and killed two individuals in the head at point-blank range. Though the events leading up to the actual crimes seemed relatively peaceful, Ross's threats and warnings caused the situation to escalate rapidly. Moreover, earlier that day, Ross had already warned Avery to not allow Cappo in her home. Avery saw that Ross had a gun on his person, and a reasonable person would interpret Ross's words to be a serious threat.

[21]    Ross is correct in pointing out that Antonio pulled out a gun. But Ross forgets that he, himself, was armed with a gun throughout the entire altercation, so despite his claims of self-defense, he was the catalyst that caused the ordeal to spin out of control. Then, without any further provocation, Ross shot and killed Anthony, who was unarmed and had his arms raised, immediately after killing Antonio. These were serious crimes that resulted in two deaths. We do not find that the nature of the offenses renders the sentence inappropriate.

[22]    Second, as to the character of the offender, it is true that Ross was cooperative with police throughout the entire investigation. Ross maintained a cool manner and calmly answered the officers' questions. Without hesitation, he even admitted to committing the crimes. In Ross's view, his cooperation renders the two maximum sentences inappropriate. We cannot agree, in light of Ross's extensive criminal history both as a juvenile and as an adult. He has been

previously charged and convicted of misdemeanor theft, disorderly conduct, failure to stop after an accident, misdemeanor driving with a suspended license, and felony attempted murder. He has also violated probation multiple times. Notwithstanding his calm demeanor on the night of the actual crime, Ross's history shows that he is unable or unwilling to comply with the rule of law despite multiple opportunities to do so. The trial court reasonably found that Ross was likely to reoffend given his repeated run-ins with the law. We do not find the sentence inappropriate in light of Ross's character.

[23] In sum, we do not find that the two consecutive sixty-five-year sentences were inappropriate under Indiana Appellate Rule 7(B). In balancing the trial court's determination of the particularly violent and unprovoked nature of these crimes against Ross's criminal history and demeanor in carrying out these particular acts, we cannot say that the trial court's sentence is inappropriate. In conclusion, we will not revise Ross's sentence.

[24] The judgment of the trial court is affirmed

May, J., and Robb, J., concur.