


FILED

Oct 17 2025, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Domonic Chester Brothers,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

October 17, 2025

Court of Appeals Case No.
24A-CR-2327

Appeal from the Porter Superior Court

The Honorable Jeffrey W. Clymer, Judge

Trial Court Cause No.
64D02-2306-MR-5624

---

**Opinion by Judge Scheele**
Judges May and Weissmann concur.

**Scheele, Judge.**

## Case Summary

Following a jury trial, Domonic Chester Brothers was found guilty of murder and Level 2 felony robbery resulting in serious bodily injury. She now appeals, asserting the following arguments for our review: (1) whether the trial court erred in admitting statements she made to law enforcement that were not video recorded and (2) whether her convictions for murder and robbery resulting in serious bodily injury violate double jeopardy. Finding no error in the trial court's admission of evidence, we affirm Brothers' murder conviction. But because the two convictions violate double jeopardy, we remand for vacation of the robbery conviction and for resentencing.

## Facts and Procedural History

In June 2023, Brothers lived with Jada Monroe in Gary.[1] The two planned to leave Indiana but did not have a car, so they developed a plan to use the app Grindr to find a "mark" and rob them. Tr. Vol. V p. 146. On June 12, Brothers and Monroe initiated a conversation with Derek Hartz on Grindr. They arranged to meet with him at a wooded fishing area in Porter County and planned to "rob him of [his] vehicle by knocking him unconscious." *Id.* at 150. The next day, the three met and, at some point while having sex, Brothers hit

---

[1] At times, the record uses both male and female pronouns in reference to Brothers. Brothers' brief uses female pronouns, so we do the same.

Hartz on the head with a brick, causing him to bleed. Monroe then stabbed Hartz multiple times. Brothers and Monroe fled the scene with Hartz's phone and car. Hartz's body was discovered about an hour later. He had suffered blunt force trauma to the back of the head as well as multiple stab wounds. Law enforcement responded to the scene and found a gold fanny pack with Monroe's ID near Hartz's body.

[3] Following the murder, Brothers and Monroe traveled to Ohio in Hartz's car. They were apprehended on June 14 by Ohio law enforcement and taken to a local jail. Detectives William Marshall and Brian Dziedzinski of the Porter County Sheriff's Department arranged to interrogate Brothers in Ohio. Detective Marshall contacted the Ohio jail and requested an interrogation room "with audio video" capabilities. Tr. Vol. III p. 64. However, when the detectives arrived at the jail, they were informed it "did not have a room with functioning audio and video recording." *Id.* at 65. The detectives then conducted an interview with Brothers and attempted to audio and video record the interview on a cell phone. They successfully recorded the entire interview's audio. However, the video record was only "[p]artially" successful, as "several minutes into the interview" the detectives realized the video recording had stopped. *Id.* at 65, 67. They again attempted to record and continued the interview, realizing only afterward that this recording attempt also failed.

[4] During this interview, Brothers denied hitting or stabbing Hartz. She admitted that she was with him and Monroe and stated that Monroe stabbed Hartz. The detectives later conducted a second interview, which was audio and video

recorded, in which Brothers admitted she hit Hartz in the head with a brick, after which Monroe went "ballistic" and stabbed him. *See* Ex. 335, 2:53:35-2:56:35.

[5] The State charged Brothers with murder, felony murder, and Level 2 felony robbery resulting in serious bodily injury.[2] Brothers filed a motion to exclude her first interview with detectives, citing Indiana Evidence Rule 617 and the lack of a complete video recording. The trial court denied the motion to exclude.

[6] A jury trial was held in August 2023. Over Brothers' objection, the audio from her first interview with detectives was played for the jury. The jury found Brothers guilty as charged. The trial court entered convictions for all three counts, but at sentencing "vacated" the felony murder conviction "for the purpose of double jeopardy." Tr. Vol. VI p. 30. The court sentenced Brothers to sixty-five years on the murder conviction and seventeen-and-a-half years on the robbery conviction, for an aggregate eighty-two-and-a-half years in the Indiana Department of Correction. Brothers now appeals.

---

[2] Monroe was also charged with murder, felony murder, and Level 2 felony robbery. Monroe pleaded guilty as charged and was sentenced to an aggregate seventy-two-and-a-half years in the Indiana Department of Correction. We upheld Monroe's convictions and sentence on direct appeal. In doing so, we did not address Monroe's double-jeopardy argument, finding it to be waived by way of her guilty plea. *See Monroe v. State*, No. 24A-CR-2812 (Ind. Ct. App., June 27, 2025), *trans. pending*.

## Discussion and Decision

### I. Evidence Rule 617

[7] Brothers first argues the trial court erred in admitting the audio recording of her first statement to officers, contending the lack of video recording violated Indiana Evidence Rule 617. Challenges to the admission of evidence are generally reviewed for abuse of discretion. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[8] Indiana Evidence Rule 617 provides, "In a felony criminal prosecution, evidence of a statement made by a person during a Custodial Interrogation in a Place of Detention shall not be admitted against the person unless an Electronic Recording of the statement was made, preserved, and is available at trial[.]" The Rule goes on to define "Electronic Recording" as "an **audio-video** recording that includes at least not only the visible images of the person being interviewed but also the voices of said person and the interrogating officers[.]" *Id.* at (b) (emphasis added). The rule also enumerates several exceptions, including where there is "clear and convincing proof" that:

> (3) The law enforcement officers conducting the Custodial Interrogation in good faith failed to make an Electronic Recording because the officers inadvertently failed to operate the recording equipment properly, or without the knowledge of any of said officers the recording equipment malfunctioned or stopped operating; or

> * * *

> (7) Substantial exigent circumstances existed which prevented the making of, or rendered it not feasible to make, an Electronic Recording of the Custodial Interrogation, or prevent its preservation and availability at trial.

*Id.* at (a)(3), (7).

[9] Here, it is undisputed the challenged statement occurred during a custodial interrogation in a place of detention. However, the trial court determined the good-faith exception in Subsection (a)(3) and the exigent-circumstances exception in Subsection (a)(7) both applied and admitted the statement. Brothers challenges this admission, arguing neither exception applies.

[10] We see no error in the trial court's determination that the good-faith exception in Subsection (a)(3) applies.[3] The evidence shows the officers traveled to Ohio to interview Brothers. In anticipation of this, the officers contacted the Ohio jail and requested an interview room equipped with audio and video recording. Upon arriving in Ohio, the officers were informed that no such room was available. The officers then attempted to use their cell phones to audio and video record the interview. While this was successful as to the audio, a few minutes into the interview the officers noticed the video was not working. They attempted to fix it but realized after the interview that the video again failed to record. In short, the lack of video recording was unintentional, not known to

---

[3] Because we find the good-faith exception was not an error, we need not address Brothers' arguments regarding exigent circumstances or harmless error.

officers at the time of the interview, and took place in another state where officers lacked access to reasonable alternatives. *See Weed v. State*, 192 N.E.3d 247, 250 (Ind. Ct. App. 2022) (affirming trial court's admission of non-recorded statement under the good-faith exception to Rule 617 where there was an "absence of any evidence indicating that the electronic recording system's malfunction was intentional, known to [officers] at the time of the custodial interrogation, or took place in Indiana"). This is clear and convincing proof the officers acted in good faith. The trial court did not err in admitting the statement.

## II. Double Jeopardy

[11] Brothers also argues her convictions for murder and robbery constitute double jeopardy. We review double-jeopardy claims de novo. *McGuire v. State*, 263 N.E.3d 745, 749 (Ind. Ct. App. 2025), *trans. denied*. Where, as here, the claim involves a single criminal transaction that violates multiple statutes with common elements, we apply the analysis laid out in *Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020).

[12] First, we determine whether "the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication[.]" *Id.* at 248. If so, the inquiry is at an end and there is no double-jeopardy violation. *Id.* But here, neither the murder statute nor the robbery statute permits multiple punishment. As such, we turn to *Wadle*'s next step.

Second, we determine whether the offenses are included "either inherently or as charged." *Id.* If neither offense is included in the other, again the inquiry ends and there is no double-jeopardy violation. *Id.*

> Included offenses come in two forms: inherently included offenses and offenses that are included as charged. An offense is inherently included if it meets the definition of "included offense" in Indiana Code Section 35-31.5-2-168. An offense is included as charged (or "factually included") if the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense. In determining whether offenses are included as charged, we examine only the facts as presented on the face of the charging information.

*McGuire*, 263 N.E.3d at 749-50 (quotations omitted).

Brothers acknowledges the offenses of murder and robbery resulting in serious bodily injury do not meet the statutory definition of an "included offense" under Indiana Code section 35-31.5-2-168, as each crime includes an element the other does not. However, she argues the offenses are factually included. "[W]hen assessing whether an offense is factually included, a court may examine only the **facts as presented on the face of the charging instrument.**" *A.W. v. State*, 229 N.E.3d 1060, 1067 (Ind. 2024) (emphasis in original). "This includes examining the 'means used to commit the crime charged,' which must 'include all of the elements of the alleged lesser included offense.'" *Id.* (quoting *Wadle,* 151 N.E.3d at 251).

[15]    In *A.W.*, our Supreme Court recently clarified that, where ambiguities exist in a charging instrument about whether one offense is factually included in another, courts must construe those ambiguities in the defendant's favor and find a presumptive double-jeopardy violation, although the State can later rebut this presumption. *Id.* at 1069. This is a protection for the defendant, as otherwise the State "could unilaterally decide how much to include (or not include) in the charging instrument, which could decisively determine the outcome of a double jeopardy claim." *Id.*

[16]    Turning to the charging information here, Count I, murder, reads as follows:

> [T]hat on or about June 13, 2023[,] in the County of Porter, State of Indiana, Domonic Chester Weaver a.k.a. Domonic Chester Brothers did knowingly or intentionally kill Derek Hartz, contrary to the form of the statute and against the peace and dignity of the State of Indiana.

App. Vol. II p. 16 (formatting altered). The charging information for Count III, Level 2 felony robbery, reads as follows:

> [T]hat on or about June 13, 2023, in the County of Porter, State of Indiana, Domonic Chester Weaver a.k.a. Domonic Chester Brothers, while armed with a deadly weapon, did knowingly or intentionally take property, to wit: 2017 Volkswagon [sic] Passat and a cellphone, from Derek Hartz or his presence by using or threatening the use of force on Derek Hartz, resulting in serious bodily injury to Derek Hartz, contrary to the form of the statute and against the peace and dignity of the State of Indiana.

*Id.* (formatting altered).

[17] This Court recently addressed a similar charging situation in *Eversole v. State*, 251 N.E.3d 604 (Ind. Ct. App. 2025), *trans. denied*. There, the defendant was charged with murder and Level 2 felony attempted robbery. In determining whether the offenses were factually included, we stated:

> Here, aside from names and dates, the face of the State's charging information against Eversole on the murder charge simply tracks the statutory language for the offense. The face of the charging information for the Level 2 felony attempted robbery charge identified a series of alternative factual predicates, any one of which may have in fact been the means used to commit that offense. Those factual predicates included "the use of force" by Eversole and having "fired a handgun at David Carroll." The means used, on its face and when compared with the lack of detail included in the murder allegation, does not preclude any of the elements of the alleged murder. That is, one cannot tell from the face of the charging instrument whether the means used to commit the attempted robbery was necessarily something other than the murder. Accordingly, the manner in which the State drafted the information between those two offenses created a rebuttable presumption of a substantive double jeopardy violation.

*Id.* at 608 (internal citations omitted).

[18] Similarly, here the charging information for murder simply tracks the statutory language, while the robbery charge broadly alleges a threat or the use of force. Because of the way the information was drafted, specifically the lack of factual detail, one cannot necessarily tell whether the means used to commit the robbery was something other than murder. In other words, it is entirely possible on the face of this charging information that the use of force alleged in the

robbery count was in fact the killing alleged in the murder count. This ambiguity creates a rebuttable presumption of a substantive double-jeopardy violation. *See A.W.*, 229 N.E.3d at 1070.

[19] Thus, we proceed to the final step and give the State the opportunity to rebut the presumptive double-jeopardy violation. To do so, "the State must demonstrate that it made clear to the fact-finder at trial that the apparently included charge was supported by independent evidence such that the State made a distinction between what would otherwise be two of the same offenses." *Eversole*, 251 N.E.3d at 608 (quotation omitted). To make this determination, we look to whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Wadle*, 151 N.E.3d at 249.

[20] The facts as presented at trial make clear this was a single transaction. Brothers and Monroe lured Hartz to a secluded location with a plan to knock him unconscious and rob him. When the three arrived at the location, Monroe and Brothers attacked Hartz and then immediately left in his car. Thus, the time, place, purpose, and continuity of action all point toward a single transaction. The State summarized as much in its opening statement, stating "in the process of trying to take [Hartz's] money and taking his vehicle, they brutally murdered Derek Hartz[.]" Tr. Vol. III p. 74.

[21] As such, we agree with Brothers that the court violated her substantive double-jeopardy rights by entering judgements of conviction for both murder and Level

2 felony robbery. The proper remedy is to vacate the conviction with the lesser penalty—the Level 2 felony attempted robbery—and its accompanying sentence. *See Eversole*, 251 N.E.3d at 609.

## Conclusion

[22] We affirm Brothers' conviction and sentence for murder but reverse her conviction for Level 2 felony robbery and remand for vacation of that conviction and for resentencing.[4]

[23] Affirmed in part, reversed in part, and remanded with instruction.

May, J., and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

James E. Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Jodi K. Stein
Deputy Attorney General
Indianapolis, Indiana

---

[4] Brothers makes two other arguments relating to sentencing, challenging: (1) the appropriateness of her sentence under Indiana Appellate Rule 7(b) and (2) an alleged clerical error in the sentencing order. While the nature and circumstances of this offense may support the trial court's imposition of the maximum sentence for murder, because our vacation of the robbery conviction alters the aggregate sentence, we remand for resentencing and thus will not address that issue. Furthermore, because a new sentencing order will be produced on remand, we need not address her argument regarding the alleged clerical error.