

FILED

Jul 07 2016, 3:16 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

### No. 49S05-1602-CR-83

TIMMIE BRADLEY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G20-1301-FA-3632
The Honorable Daniel L. Pflum, Senior Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-1404-CR-181

**July 7, 2016**

**David, Justice.**

This case involves whether Bryant Beatty had apparent authority to consent to police entry into Defendant, Timmie Bradley's, home. Specifically, does a houseguest, who happens to answer the door to a home shortly after he knocked to gain entry himself, have the apparent authority to consent to police entry? Under the facts and circumstances of this case, we hold that he does not.

Bradley also challenges the protective sweep of his home that occurred after police entered. However, we need not address the merits of his argument regarding the protective sweep. Because police did not have a warrant, or warrant exception, to justify entry into the home in the first place, the subsequent warrantless police searches, including the protective sweep, were unlawful and thus, the fruits of those searches must be suppressed. Accordingly, we reverse the trial court's denial of Bradley's motion to suppress all evidence seized in the search of his home.

## Facts and Procedural History

After receiving an anonymous complaint about drug dealing at an Indianapolis home, Indianapolis police began conducting surveillance at that home. On one occasion, police observed "a lot of foot traffic" with visitors to the home "going inside, staying for [a] very short amount of time and leaving." (Tr. 36-37.) Police believed that such activity was indicative of the sale of drugs. Police observed a man later identified as Timmie Bradley enter the home. They further observed a man later identified as Bryant Beatty enter the home.[1]

On January 15, 2013, police were again conducting surveillance on the home when they saw Beatty arrive again. They watched as Beatty approached the home and knocked. Someone let him inside a short time later. A few minutes later, police decided to conduct a "knock and talk."[2] They knocked on the door and Beatty, who had just arrived and knocked himself a few minutes earlier, opened the door.

Police did not know who lived in, leased or owned the home. Indeed, Detective Campbell testified:

---

[1] The State presented no evidence as to the circumstances of Beatty's entering the home on this occasion, such as whether he knocked or used a key.

[2] "A knock and talk investigation involves officers knocking on the door of a house, identifying themselves as officers, asking to talk to the occupant about a criminal complaint, and eventually requesting permission to search the house." Hayes v. State, 794 N.E.2d 492, 496 (Ind. Ct. App. 2003) (internal quotations and citations omitted).

Q: And when Defendant Beatty opened the door, you didn't know if he was a resident or an owner or had any authority whatsoever to allow – to allow you to enter the residence?

[Detective Campbell:] That's correct.

(Tr. 75.) Nevertheless, police requested entry into the home. Beatty consented. Once inside the home, police smelled burnt marijuana. Police asked Beatty if there was anyone else in the home. One detective testified that Beatty said there was, while another detective testified that Beatty said no. Police then saw a man peek out from a doorway at the back of the home. After this man saw the police, he went back into the room he was in. Thinking the man could have a weapon, police first asked, then ordered the man to come out and talk. After the man did not comply, police decided to a do a "protective sweep" of the home "just for officer[ ] safety." (Tr. 43, 154.)

During the sweep, police entered the kitchen where they observed several items on the counter including a set of digital scales and a "very small amount of cocaine." (Tr. 181.) Police also entered a closed bedroom and detained another man. Police searched the back bedroom, including a closet and sock therein, and inside the kitchen drawers and cabinets. They found heroin and other items. Police detained the men they found in the home on the couch. They also searched the couch and found a small handgun under a cushion.

While police were conducting their search, Bradley arrived home. He entered using a key. When he entered, he had his left hand in his coat pocket. The police identified themselves and ordered Bradley to remove his hand from his pocket. When he failed to comply, police "took him down to the ground" and discovered a baggie of cocaine sticking out of his pocket. (Tr. 162-163.) Police searched Bradley's person, recovering a baggie that contained a large amount of cocaine, a large amount of U.S. currency, and a small amount of cocaine in the coin pocket of Bradley's pants.

3

Bradley was arrested and charged with: Count I, class A felony dealing in cocaine[3]; Count II, class C felony possession of cocaine and a firearm[4]; Count III, class C felony possession of cocaine[5]; Count IV, class A felony dealing in heroin[6]; Count V, class C felony possession of heroin and a firearm[7]; Count VI, class C felony possession of marijuana[8]; and Count VII, class A misdemeanor possession of marijuana[9].

Bradley filed a motion to suppress all the evidence seized as a result of the police search of his home without a warrant. The trial court conducted a two-day combined suppression hearing and bench trial. The trial court excluded items found in the kitchen and bedroom that were not found in plain view, but ultimately, admitted the rest of the evidence.

The court found Bradley guilty of Count I, class A felony dealing in cocaine; Count II, class C felony possession of cocaine and a firearm; Count III, class C felony possession of cocaine; and Count VII, class A misdemeanor possession of marijuana. He was found not guilty as to the other counts.

Bradley appealed, alleging that the police made a warrantless entry into his home without valid consent and that they conducted an illegal "protective sweep" once inside. He also argued that his convictions violated the prohibitions against double jeopardy and that the evidence to support his convictions was insufficient. In a published opinion, the Court of Appeals affirmed Bradley's class A felony cocaine conviction, but vacated the other three convictions, on double jeopardy and sufficiency grounds. Bradley v. State, 44 N.E.3d 7, 26 (Ind. Ct. App. 2015), vacated. The court upheld the police entry into Bradley's home and the protective search as being constitutional under both the federal and Indiana constitutions. Id. at 18, 20. Bradley petitioned

---

[3] Ind. Code § 35-48-4-1(a)(2).
[4] Ind. Code § 35-48-4-6(b)(1).
[5] Ind. Code § 35-48-4-6(b)(1).
[6] Ind. Code § 35-48-4-1(a)(2).
[7] Ind. Code § 35-48-4-6(b)(1).
[8] Ind. Code § 35-48-4-6(b)(1).
[9] Ind. Code § 35-48-4-11.

to transfer, which we granted, thereby vacating the Court of Appeals' opinion. Ind. App. Rule 58(A).

## Standard of Review

The trial court has broad discretion to rule on the admissibility of evidence. Guilmette v. State, 14 N.E.3d 38, 40-41 (Ind. 2014) (citations omitted). We review its rulings "for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." Id. However, the "constitutionality of a search or seizure is a question of law, and we review it de novo." Kelly v. State, 997 N.E.2d 1045, 1050 (Ind. 2013) (citations omitted).

## Discussion

Bradley first argues that police entry into his home was unlawful because Beatty did not have apparent authority to give consent to that entry as the State failed to demonstrate that they had a reasonable belief that Beatty had authority to consent. Bradley also argues that once police were in his home, they conducted an unlawful protective sweep. We find the issue of whether Beatty had apparent authority to consent to police entry into Bradley's home dispositive.

The Fourth Amendment protects persons from unreasonable search and seizure, and this protection has been extended to the states through the Fourteenth Amendment. U.S. CONST. amend. IV; Mapp v. Ohio, 367 U.S. 643, 650 (1961). Warrantless searches and seizures inside the home are presumptively unreasonable "subject only to a few specifically established and well delineated exceptions." Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) (citations omitted). "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." Berry v. State, 704 N.E.2d 462, 465 (Ind. 1998) (citing Brown v. State, 691 N.E.2d 438, 443 (Ind. 1998)).

One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Stallings v. State, 508 N.E.2d 550, 552 (Ind. 1987). "Authority to consent to a search can be either apparent or actual."

Gado v. State, 882 N.E.2d 827, 832 (Ind. Ct. App. 2008), trans. denied. Actual authority requires a sufficient relationship to or mutual use of the property by persons generally having joint access to or control of the property for most purposes. Halsema v. State, 823 N.E.2d 668, 677 (Ind. 2005). The test for evaluating apparent authority is whether "the facts available to the officer at the time would cause a person of reasonable caution to believe that the consenting party had authority over the premises." Primus v. State, 813 N.E.2d 370, 374-75 (Ind. Ct. App. 2004) (citing Krise v. State, 746 N.E.2d 957, 967 (Ind. 2001); Trowbridge v. State, 717 N.E.2d 138, 144 (Ind. 1999)). The State bears the burden of proving that the third-party possessed the authority to consent. Primus, 813 N.E.2d at 375.

Here, there is no dispute that Beatty did not have actual authority; instead, the issue is whether Beatty had apparent authority to consent to police entry into Bradley's home. The facts available to police when determining whether Beatty had apparent authority reveal that:

1)  Two detectives saw Beatty enter the home on one prior occasion. (The State presented no evidence as to the circumstances of Beatty's entering the home on this prior occasion, such as whether he knocked or used a key.)
2)  On the day of the incident in question, police observed Beatty knock to gain entry to the home.
3)  After someone let Beatty into the home, police waited a few minutes and then knocked on the door. Beatty answered the door. Police did not ask Beatty who he was or if he lived in the home so as to ascertain if he had authority to grant consent to enter.
4)  Police did not know who lived in, leased or owned the home. Indeed, Detective Campbell testified:

    Q:    And when Defendant Beatty opened the door, you didn't know if he was a resident or an owner or had any authority whatsoever to allow – to allow you to enter the residence?

    [Detective Campbell:]  That's correct.

(Tr. at 75.)  Nevertheless, police requested entry into the home. Beatty consented.

In support of its argument that it was reasonable for police to believe Beatty had authority over the premises, the State argues that "Beatty did not indicate that he was a guest or that he could not give consent." (Brief in Opposition to Transfer at 8.) However, it is the State's burden to prove

6

that Beatty had the authority to consent.  <u>Primus</u>, 813 N.E.2d at 375.  In this case, the State failed to meet its burden because the only evidence the State had to support its position that Beatty had authority to consent was that Beatty had been to the home on one prior occasion and that he answered the door to the police, after knocking to gain entry himself.  These facts do not demonstrate that the police had a reasonable belief that Beatty had authority over the premises.  On the contrary, and notably, Detective Campbell testified that he had no idea if Beatty had any authority at all to consent to police entry.

The State also argues that Beatty had an "affiliation with [the] residence" because police observed him there on a prior occasion and he "acted as though he had authority to decide who could or could not enter the home" by answering the door.  (Brief in Opposition to Transfer at 8.)  However, there is no legal authority for the proposition that mere "affiliation" with the home is enough to establish apparent authority.[10]  Instead, as discussed above, actual authority requires a sufficient relationship to or mutual use of the property by persons generally "*having joint access to or control [of the property] for most purposes*."  <u>Halsema</u>*,* 823 N.E.2d at 677 (emphasis added).  To prove apparent authority then, officers needed to prove that they held a reasonable belief that Beatty had authority over the home; that is, Beatty had joint access to or control of the property for most purposes.  Thus, mere "affiliation" with the home, without more, is not enough to establish a reasonable belief that the consenting party had authority over the home; nor does merely answering the door to a home indicate authority over that home.  There could be a number of situations where someone lacking joint access or control over the property, such as a houseguest or maintenance worker, could answer the door.  Beatty's visit to Bradley's home on one prior occasion and the fact that he answered the door do not demonstrate to a reasonable person that Beatty had joint access and control over the home.

**Conclusion**

We hold that under the facts and circumstances of this case, police did not have a reasonable belief that Beatty had authority to consent to a search of Bradley's home. Because

---

[10] The State conceded at oral argument that the term "affiliation" does not have any legal significance in this context.

7

police did not have a warrant and Beatty did not have apparent authority to consent to police entry into Bradley's home, the police entry into and subsequent protective search of Bradley's home violated his Fourth Amendment rights. Accordingly, all evidence seized as the fruit of that warrantless entry and the subsequent protective search should be suppressed.[11] We therefore reverse the trial court's denial of Bradley's motion to suppress and remand for further proceedings consistent with this opinion.

Rush, C.J., Rucker, Massa and Slaughter, J.J., concur.

---

[11] Generally speaking, evidence obtained pursuant to an unlawful search or seizure must be excluded under the fruit of the poisonous tree doctrine. Clark v. State, 994 N.E.2d 252, 266 (Ind. 2013) (citations omitted). The fruit of the poisonous tree doctrine has also been applied to illegal entry into a residence. See Hanna v. State, 726 N.E.2d 384, 389 (Ind. Ct. App. 2000) (Police did not have probable cause to make initial entry into the residence. Thus, all drugs obtained in the home were fruits of the illegal search and were properly suppressed).