## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 27 2018, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brenzell Bell,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

July 27, 2018

Court of Appeals Case No.
49A02-1711-CR-2603

Appeal from the Marion Superior Court

The Honorable James Snyder, Commissioner

Trial Court Cause No.
49G20-1610-F2-42416

**Brown, Judge.**

[1] Brenzell Bell appeals his convictions for dealing in a narcotic drug, dealing in methamphetamine, possession of a controlled substance, possession of marijuana, and possession of paraphernalia. Bell raises one issue which we revise and restate as whether the trial court abused its discretion in admitting into evidence the statements he made to police during the execution of a search warrant. We affirm.

## Facts and Procedural History

[2] On October 25, 2016, Indianapolis Metropolitan Police Detective Beniam Kumbi went to a house on Chester Avenue in Marion County with a SWAT team to serve a search warrant. The police secured the house, and Detective Kumbi read the search warrant and *Miranda* warnings[1] to the persons in the house, including Bell. In executing the warrant, police discovered a firearm, loaded magazines, and marijuana on the couch in the living room, a pipe on the floor, a shotgun in a bedroom closet, a box of shotgun ammunition in a bedroom window, and a body shop repair receipt containing Bell's name and the address of the house in the basement. In the kitchen, police discovered two digital scales, a bottle of NoDoz, a strip of suboxone, and sandwich baggies. They recovered methamphetamine with a weight of 4.71 grams, a substance containing heroin and fentanyl with a weight of 27.88 grams, marijuana with a weight of 2.1 grams, and buprenorphine.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), *reh'g denied*.

[3] While at the house, Bell indicated to Detective Kumbi that he lived there and Detective Kumbi recorded the conversation. At one point during the recorded conversation, Detective Kumbi asked "[y]eah, he's just using you to sell his shit. How much money do you make," and Bell replied "[u]h, if I sell it, like, a hundred a gram or, you know, one to seventy" and "[a]nywhere from about seventy to a hundred, depending on who come through." State's Exhibit 47 at 4. Detective Kumbi asked "[h]ow much would you say you sell in a day," and Bell answered "[s]ome days none. Some days might move, like, five grams. Some days, you know, two or three grams. It's just like a, you know, anywhere between forty to five grams - forty dollars' worth to five, six grams. Or some days no - there has been days none." *Id.*

[4] The State charged Bell, as amended, with: Count I, dealing in a narcotic drug as a level 2 felony; Count II, dealing in methamphetamine as a level 3 felony; Count III, possession of a narcotic drug as a level 3 felony; Count IV, possession of methamphetamine as a level 5 felony; Count V, possession of a controlled substance as a level 6 felony; Count VI, possession of marijuana; and Count VII, possession of paraphernalia. Bell filed a motion to suppress his statements to Detective Kumbi during the execution of the warrant. Following a hearing, the court found that Bell knowingly and voluntarily waived his *Miranda* rights and denied his motion to suppress. At his jury trial, Bell objected to the admission of his statements to Detective Kumbi, and the court overruled his objection and admitted the recording and transcript of the recording of Bell's statements. Bell testified that he had been living at the house

for five to six months, he did not know about the drugs, and with respect to his conversation with Detective Kumbi that he "was just telling him what he wanted to hear after I kept telling him I didn't have anything to do with anything." Transcript Volume II at 176. The jury found Bell guilty as charged, and the court entered judgment of convictions on Counts I, II, V, VI, and VII. The court sentenced him to an aggregate sentence of twenty years with three years suspended and ordered that one year of the executed portion of his sentence be served through community corrections.

## *Discussion*

The trial court has broad discretion to rule on the admissibility of evidence. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). We review its rulings for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id*. However, we will not reverse an error in the admission of evidence if the error was harmless. *Turner v. State*, 953 N.E.2d 1039, 1058 (Ind. 2011).

Bell claims the State did not show that he knowingly, intelligently, and voluntarily waived his *Miranda* rights. He further argues that the recording presented by the State was not a "complete and continuous rendition of the interrogation with the absence of the Miranda warning in the beginning and the talk of providing information for some type of deal at the end" and that his statements were inadmissible based on Ind. Evidence Rule 617. Appellant's Brief at 17. He also argues that, under the circumstances of the police

possession and control of the room and the resources available to the police, the premises was a place of detention.

[7] The State responds that Detective Kumbi advised Bell of his *Miranda* rights and that Bell stated he understood his rights, waived those rights, and continued talking to Detective Kumbi. It argues that Bell did not object to admission of his statements on the basis of Evidence Rule 617, he does not argue fundamental error occurred, Rule 617 is not applicable as the statements were not made at a place of detention, and the rule was satisfied because there was an electronic recording of the statements. It also argues that any error in the admission of his statements is harmless.

[8] With respect to Bell's *Miranda* claims, we observe that the State bears the burden of proving beyond a reasonable doubt that the defendant voluntarily and intelligently waived his rights and that the defendant's statement was voluntarily given. *Treadway v. State*, 924 N.E.2d 621, 635 (Ind. 2010). Once this standard is met, it is not error to admit the statement. *Id.* When reviewing a challenge to the trial court's decision to admit the defendant's statement, we do not reweigh the evidence but instead examine the record for substantial probative evidence of voluntariness. *Id.* A waiver of *Miranda* rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights. *Id.* The admissibility of a statement is controlled by determining from the totality of the circumstances whether it was made

voluntarily and not induced by violence, threats, or other improper influences that overcame the defendant's free will. *Id*.

[9] The recording of the conversation between Bell and Detective Kumbi admitted into evidence reveals that Detective Kumbi stated, at the beginning of the recording, "[h]e been read his Miranda Rights and the search warrant. And, uh, we'll conduct a[n] interview." State's Exhibit 46a at 0:27-0:33. Detective Kumbi asked "[y]ou understand this is a search warrant," and Bell replied affirmatively. *Id*. at 0:39-0:44. Detective Kumbi asked "[y]ou understand your rights," and Bell replied "I mean, yeah. I mean, I do. I understand my rights. I just – I don't – damn, man. What the f--- am I gone [sic] do?" *Id*. at 0:44-0:56.

[10] The record further reveals that Detective Kumbi testified at trial that he read *Miranda* warnings to Bell from a pre-printed card, that he then had a conversation with Bell, and that he recorded Bell's statements. He testified that his recollection was that the warnings included "you have the right to remain silent, anything you say, can and will be used against you in a court of law." Transcript Volume II at 183. Detective Kumbi indicated at the suppression hearing that he read the *Miranda* warnings from a department card and that Bell acknowledged and said he understood his *Miranda* rights. Detective Kumbi indicated that he asked Bell if he understood his rights and still wanted to talk to him, that Bell replied affirmatively, and that he did not threaten or at any time tell Bell that he had to talk to him. The record supports the conclusion that Bell was advised of his *Miranda* rights and voluntarily waived them and

that the State carried its burden to demonstrate waiver. *See Treadway*, 924 N.E.2d at 635.

[11] As for Bell's argument that his statements to Detective Kumbi were inadmissible on the basis of Evidence Rule 617, we note that a party may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on a different ground. *Malone v. State*, 700 N.E.2d 780, 784 (Ind. 1998). Bell argued before the trial court that he did not waive his *Miranda* rights but did not object to the admission of the statements on the basis of Rule 617. Accordingly, this issue is waived. Because he waived this argument, he can prevail only by meeting the fundamental error standard, which requires him to show that the trial court should have raised the issue *sua sponte* due to a blatant violation of basic and elementary principles, undeniable harm or potential for harm, and prejudice that makes a fair trial impossible. *See Harris v. State*, 76 N.E.3d 137, 140 (Ind. 2017).

[12] Bell does not argue fundamental error and in any event, the trial court did not commit fundamental error. Evidence Rule 617 is not applicable in this case as it provides that, in a felony criminal prosecution, evidence of a statement made by a person during a custodial interrogation in a place of detention shall not be admitted against the person unless an electronic recording of the statement was

made, preserved, and is available at trial except under certain circumstances.[2] Ind. Evidence Rule 617(a). For purposes of the rule, "Place of Detention" means "a jail, law enforcement agency station house, or any other stationary or mobile building owned or operated by a law enforcement agency at which persons are detained in connection with criminal investigations." Ind. Evidence Rule 617(b).

[13] In *Steele v. State*, police approached the defendant in a parked vehicle, arrested him for public intoxication, and transported him to a nearby gas station where an officer read the defendant his *Miranda* rights and the defendant admitted that he had been alone and had driven the vehicle. 975 N.E.2d 430, 430-431 (Ind. Ct. App. 2012), *trans. denied*. We held on appeal that Evidence Rule 617 was not applicable because the officer's interrogation of the defendant did not occur in a place of detention and the rule does not, either explicitly or implicitly, impose an affirmative duty on law enforcement officers to transport a person to a place of detention before conducting a custodial interrogation. *Id*. at 432.

[14] In *Fansler v. State*, the defendant was lured to a motel room by the prospects of sexual intercourse and a drug sale by law enforcement who had posed as a buyer, and the defendant was arrested soon after arriving at the room. *Fansler v.*

---

[2] "Electronic Recording" means "an audio-video recording that includes at least not only the visible images of the person being interviewed but also the voices of said person and the interrogating officers." Ind. Evidence Rule 617(b).

*State*, 100 N.E.3d 250, 251-252 (Ind. 2018).[3]  After the defendant's pockets were emptied and his *Miranda* warnings were read, the defendant made two incriminating statements in response to police questions.  *Id*. at 252.  The defendant argued on appeal that the significant control that law enforcement wielded over the motel room transformed it into a space operated by law enforcement as a place of detention for purposes of Rule 617.  *Id*. at 254.  The Indiana Supreme Court disagreed and observed that law enforcement temporarily used the room to pose as drug buyers, there was no indication that the room was significantly altered or that the room was set aside for the exclusive use of law enforcement, police did not exercise the type of long-term control that is ordinarily associated with operating a space and their use of the room was sporadic by any measure as they used the room in only three sting operations within the prior year, and the primary use of the motel room was surveillance, not interrogation.  *Id*. at 254-255.

[15]     We cannot conclude, in light of *Steele* and *Fansler*, that Detective Kumbi and the SWAT team police exercised the type of long-term control ordinarily associated with operating a space to transform the house at which they executed the search warrant into a place of detention for purposes of Rule 617.  We also observe that the statements made by Bell and which he challenges on appeal were recorded.  The trial court did not commit fundamental error when it did not *sua*

---

[3] Bell cites to this Court's opinion in *Fansler v. State*, 81 N.E. 3d 671 (Ind. Ct. App. 2017), but the Indiana Supreme Court granted transfer on October 24, 2017.

*sponte* exclude Bell's statements to Detective Kumbi on the basis of Evidence Rule 617.[4]

## Conclusion

For the foregoing reasons, we affirm Bell's convictions.

Affirmed.

Bailey, J., and Crone, J., concur.

---

[4] Further, even if any error was committed in admitting Bell's statements, the error was harmless. "Under federal harmless error analysis, which is triggered by an error affecting the Defendant's federal constitutional rights, the State has the burden of proving beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Black v. State*, 794 N.E.2d 561, 565 (Ind. Ct. App. 2003). The State has met that burden here. The State presented evidence that the police discovered a loaded firearm, loaded magazines, a pipe, a shotgun, a box of shotgun shells, a body shop repair receipt containing Bell's name and the address of the house, two digital scales, a bottle of NoDoz, a strip of suboxone, sandwich baggies, buprenorphine, 4.71 grams of methamphetamine, 27.88 grams of a substance containing heroin and fentanyl, and 2.1 grams of marijuana. The State presented testimony that the items and drugs discovered throughout the house were more consistent with a person being a drug dealer than a user.