## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 29 2018, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dana Childress-Jones
The Law Office of Dana Childress-Jones, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Barnes, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 29, 2018 <br><br> Court of Appeals Case No. 49A05-1612-CR-2940 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Shatrese Flowers, Judge <br><br> Trial Court Cause No. 49G20-1502-F2-6443 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a search of his home, Mark Barnes was charged with dealing in cocaine, a Level 2 felony, and possession of cocaine, a Level 3 felony, among other offenses. Barnes brings this interlocutory appeal of the trial court's denial of his motions to suppress, raising two issues for our review which we restate as: 1) whether the trial court impermissibly shifted the burden onto Barnes to prove that officers entered and searched his home without consent; and 2) whether the arrest warrant which occasioned the officers' entry into Barnes' home was invalid because it was not signed by a judicial officer. Concluding that the trial court did not inappropriately shift the burden of proof to Barnes to prove lack of consent and that the officers entered Barnes' home pursuant to a valid arrest warrant, we affirm the trial court's denial of Barnes' motions to suppress.

# Facts and Procedural History

[2] On February 18, 2015, Officer Erik Forestal of the Indianapolis Metropolitan Police Department's Violent Crimes Unit attempted to serve an arrest warrant for robbery on Jeffrey Ramsey at the address listed on the warrant, 3918 Graceland Avenue. Officer Forestal knocked on the door, and Zelma Hutchins, the home's owner, answered. Officer Forestal explained to Zelma that he was seeking Ramsey on the outstanding robbery warrant and asked if he was there. Zelma replied that Ramsey, who she confirmed was her great-nephew, did not live there. She also told Officer Forestal that Ramsey was not

in the home at that time. In Officer Forestal's experience, people were often untruthful when asked about the whereabouts of someone he was seeking to serve with a warrant, so he asked Zelma if they "could come in to verify that [Ramsey] was not inside the residence." *Franks* Hearing Transcript of Proceedings at 9. Zelma replied, "Yes, [they] could." *Id*. Zelma then opened the door for the officers and allowed them to pass.

[3] Officer Forestal asked Zelma if there was anyone else in the home, and Zelma informed him that her daughter, Philamenia, and Barnes, her grandson, were upstairs. Officer Forestal asked Zelma to have the other occupants of the home come downstairs. Zelma called for Philamenia and Barnes, who both eventually came downstairs. Two officers assisting Officer Forestal went upstairs to look for Ramsey. Zelma's niece, Niko[1], joined the group of the home's occupants who were waiting in the living room for the officers to complete their search. As the officers searched for Ramsey upstairs, Barnes told Zelma that the officers did not have a warrant and that she should make them exit the upstairs of the home. Barnes did not address his remarks to the officers, and Zelma did not respond to Barnes' remarks. Zelma did not tell the officers that they had to leave.

[4] While searching for Ramsey upstairs, one of the assisting officers looked behind a table with a television on it. The table and television were placed diagonally

---

[1] This name is also spelled "Neiko" in the transcripts.

against a corner, creating a void where the officer believed someone could hide. The officer saw what he suspected was a bag of cocaine[2] on the floor behind the table. The officer informed Officer Forestal that he had seen suspected cocaine upstairs while searching for Ramsey. Officer Forestal advised the occupants of the home that they would seek a search warrant for the home. Barnes became agitated and stated, "This is bullsh*t!" *Id.* at 14. Barnes would not sit down when directed by officers. He refused to comply when officers attempted to handcuff him, and one of the officers deployed his taser device on Barnes.

[5] Officer Forestal submitted a sworn affidavit in support of his application for a search warrant for the home in which he averred as follows:

> Forestal explained [to Zelma] Jeffrey Ramsey had an outstanding warrant and the address of 3918 Graceland is listed on the arrest warrant and officers needed to make sure Ramsey was not inside. [Zelma] agreed to let officers come in to ensure Ramsey was not in the residence.

State's Exhibit #1 at 5. The search warrant was granted, and the suspected cocaine was recovered from the home.

[6] On February 18, 2015, the State charged Barnes with a number of offenses, including dealing in cocaine and possession of cocaine. On March 12, 2015, Barnes filed his first motion to suppress, arguing that Zelma had not given

---

[2] The substance was later determined to be heroin. The trial court granted the State's motion to amend the charging information on October 12, 2016.

consent for officers to enter her home to search. In its response, the State argued that Barnes was seeking to suppress evidence seized pursuant to a search warrant and that his suppression motion challenged the veracity of Officer Forestal's claim of consent as recited in his affidavit supporting the search warrant request. The State sought summary dismissal of Barnes' motion, arguing that pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), such challenges placed a preliminary evidentiary burden on the defendant to show that the officer made false statements to procure the search warrant, a burden which Barnes had not met in his written motion. In his written opposition to the State's response Barnes argued:

> In addition, [Zelma] disputes that she agreed to let Forestal inside to ensure Ramsey was not inside. Therefore, to the extent that the State is asking Barnes to assert the information contained in the Affidavit is false, Barnes, [sic] unequivocally asserts that the information contained in the Affidavit is false. As a result, and pursuant to the State's request, Barnes is requesting a Franks [sic] Hearing in addition to a suppressions [sic] hearing.

Appellant's Appendix, Volume II at 43.

[7] At the May 19, 2015, hearing on Barnes' motion, the State presented its evidence first, which consisted of certified copies of the search warrant and Officer Forestal's supporting affidavit. State's Ex. #1. Barnes objected to the admission of the exhibit on the basis that it was invalid to support the challenged search, but he did not object to the competency of the affidavit itself as substantive evidence. The trial court admitted the exhibit over Barnes'

objection. Barnes' counsel argued that Officer Forestal failed to recite facts in his affidavit establishing that Zelma had provided consent to enter and search and that "there's nowhere in this affidavit where it says a consent is given in this case." Motion to Suppress Transcript, Volume 2 at 12.

[8] Zelma testified at the suppression hearing that Officer Forestal did not request permission to enter her home and that she did not give him permission to do so. Philamenia and Barnes also testified that they did not give officers permission to enter the home or to search. The trial court took Barnes' motion under advisement and set the matter for a *Franks* hearing on the issue of whether Officer Forestal supplied false and misleading information regarding Zelma's consent to the judge who issued the search warrant.

[9] At the *Franks* hearing held on June 22, 2015, Officer Forestal established that he had asked Zelma if he could enter her home to confirm that Ramsey was not there and that she had assented. Two assisting officers who were present that day also confirmed that Officer Forestal had sought and obtained Zelma's permission to enter her home to look for Ramsey. Barnes declined to present additional evidence, as the trial court granted his counsel's request to take judicial notice of the prior hearing and incorporated all the testimony and evidence presented by Barnes at the May 19 suppression hearing into the *Franks* hearing. The trial court stated its intention to review all of the evidence from both hearings before issuing its rulings, to which Barnes' counsel responded, "Okay." *Franks* Hrg. Tr. of Proceed. at 55-56. At the conclusion of the *Franks* hearing, the trial court took all matters under advisement.

[10]     On July 16, 2015, the trial court issued an order denying Barnes' motion to suppress, finding that the officers had a valid arrest warrant, Zelma allowed the officers in her residence to search for Ramsey, and that the suspected cocaine was observed in plain view while officers searched for Ramsey. Appellant's App., Vol. II at 56-57. The trial court also found the "law enforcement officers credible and therefore the statements made in the Affidavit for Probable Cause for the search warrant were not false." *Id*. at 57.

[11]     Barnes sought to have the trial court's order denying his motion to suppress certified for interlocutory appeal. The trial court denied this first request for certification on August 6, 2015. On June 15, 2016, Barnes filed a second motion to suppress and to certify his suppression issues for interlocutory appeal. A hearing was held on June 28, 2016, after which the trial court denied both motions. In response to a specific discovery request, the State supplied Barnes with a copy of the Ramsey arrest warrant. The arrest warrant was not signed by a judicial officer. On October 11, 2016, Barnes filed a combined renewed motion to suppress and motion to dismiss in which he reasserted his previous grounds for suppression and additionally challenged the validity of the arrest warrant on the basis that it was invalid having not been signed by a judicial officer. A hearing was held on Barnes' motions on October 12, 2016, at which the trial court admitted into evidence certified copies of the Criminal Probable Cause Warrant Sheet and the robbery arrest warrant pertaining to Ramsey. Second Supplemental Exhibit Volume, Volume I at 3-4. The Probable Cause Warrant Sheet was signed by a judicial officer and indicated that probable cause

was found to arrest Ramsey. *Id*. at 3. The Warrant Sheet bore the hearing date of January 14, 2015, and was issued under Cause Number 49G02-1501-F3-001370, the same case number shown on the arrest warrant. *Id*. at 3-4. The trial court denied Barnes' suppression and dismissal motion on October 18, 2016. On November 14, 2016, Barnes filed a third motion seeking to certify the trial court's October 18 order for interlocutory appeal which the trial court granted. We accepted jurisdiction over this appeal on January 27, 2017.

# Discussion and Decision

## I. Consent to Enter and Search

[12] Barnes argues that the trial court erred in denying his motion to suppress because the trial court impermissibly placed a burden on him to prove lack of consent. Specifically, Barnes contends that, because the State failed to present live officer testimony at the hearing on his first motion to suppress to prove that Zelma[3] consented to the officers' entry and the search of her home, the trial court should have ruled in his favor without taking further evidence or considering other issues. Barnes argues that "[r]ather than grant [Barnes'] Motion to Suppress as the result of the State's failure to meet its burden, the

---

[3] Although three other people in addition to Zelma were present in the home when officers entered, neither the State nor Barnes suggest that anyone other than Zelma provided consent to enter and search.

trial court compounded its error by conducting a Franks [sic] hearing."
Appellant's Brief at 14.

## A. Standard of Review

It is well-settled that we review a trial court's denial of a motion to suppress under a standard similar to other sufficiency issues, namely without reweighing the evidence and by determining if there is substantial evidence of probative value that supports the trial court's decision. *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014). We consider the evidence favorable to the trial court's ruling as well as substantial uncontradicted evidence to the contrary to decide whether the evidence is sufficient to support the ruling. *Id.* The ultimate ruling on the constitutionality of a search is a legal conclusion that we review de novo. *Id.*

## B. The Suppression and *Franks* Hearings

The suppression litigation in this matter began when Barnes filed an initial motion in which he argued that the officers' entry and search of Zelma's home violated his Fourth Amendment[4] rights because Zelma had not provided consent. The Fourth Amendment protects persons from unreasonable search and seizure. U.S. Const. amend. IV. A warrantless search or seizure inside a

---

[4] Barnes also claims the challenged evidence should have been suppressed because the State failed to show that the search was reasonable under Article 1, Section 11, of the Indiana Constitution. Appellant's Br. at 16. Barnes does not develop this argument with relevant case law or citations to the record, and, therefore, he has waived the issue. *See Crabtree v. State*, 762 N.E.2d 217, 220 (Ind. Ct. App. 2002) (holding that failure to develop a separate state constitutional argument results in waiver of the claim).

home is presumptively unreasonable unless it is subject to one of a few established and well-delineated exceptions. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). A voluntary and knowing consent to search is one such well-recognized exception to the warrant requirement. *Id*. The State has the burden of proving that this exception to the warrant requirement existed at the time of the search. *Id*. Therefore, we agree with Barnes that the State had the burden of proof to establish Zelma's consent in order to prevail on Barnes' suppression claim.

[15] In response to Barnes' initial suppression motion, the State filed a dismissal motion based on *Franks v. Delaware*. In that case the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [was] necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155-56. The State argued that Barnes' suppression motion challenged Officer Forestal's assertion that Zelma had provided consent as averred in the affidavit supporting his request for a search warrant. We agree with the State that, pursuant to *Franks*, Barnes had a preliminary burden of proof to show that Officer Forestal's averments were false and were knowingly, intentionally, or recklessly included in the warrant affidavit. Barnes' response to the State was to confirm that he was challenging the affidavit and to request a *Franks* hearing. Appellant's App., Vol. II at 43.

[16] Thus, by the time of the hearing on Barnes' suppression motion, both his suppression claim and the *Franks* issue were before the trial court. At the suppression hearing, the trial court took the State's evidence first, which consisted of a certified copy of Officer Forestal's search warrant affidavit which was admitted as substantive evidence. Barnes then presented his evidence which consisted of the testimony of Zelma, Philamenia, and Barnes. At the close of the hearing, the trial court took Barnes' suppression claim under advisement. The trial court also determined that Barnes had made the requisite preliminary *Franks* showing and that an additional hearing was required on the *Franks* issue. The trial court later held a *Franks* hearing at which three officers presented their testimony, and the trial court incorporated Barnes' evidence from the prior suppression hearing.

[17] The trial court conducted two hearings in which evidence was presented that was relevant to both Barnes' suppression claim and the *Franks* issue, after which it issued its order addressing both. Barnes' argument that the trial court was required to rule in his favor after the initial suppression hearing because the State did not present any live officer testimony to carry its burden of proof on his suppression claim is unpersuasive for at least two reasons. The State presented substantive evidence at the suppression hearing in the form of a certified copy of the Officer Forestal search warrant affidavit. State's Ex. #1. Barnes does not cite to, and we are unaware of, any authority mandating that the State present live witness testimony at a suppression hearing. In addition, the trial court was not required to rule on Barnes' suppression claim at the close

of the suppression hearing. Barnes does not direct us to, and we are unaware of, any authority for his apparent proposition that a trial court may not entertain multiple issues at the same hearing or that it may not hold more than one hearing on an issue. We find no evidence in the record that the trial court directed Barnes to prove lack of consent or that the trial court misunderstood the parties' respective evidentiary burdens.

[18] Furthermore, at Barnes' request, at the *Franks* hearing the trial court took judicial notice of the evidence presented at the suppression hearing, which was proper. *See Horton v. State*, 51 N.E.3d 1154, 1160-61 (Ind. 2016) (noting that Indiana Evidence Rule 201(b)(5) now allows courts to take judicial notice of "records of a court of this state," including its own records). When the trial court stated its intention to review all the evidence from both hearings before issuing its rulings, Barnes' counsel did not object. We conclude that the trial court properly had the combined evidence of both hearings upon which to base its order denying Barnes' suppression motion and that it did not impermissibly shift the State's evidentiary burden onto Barnes.

## C. Sufficiency of the Evidence

[19] In a related argument, Barnes also contends there was no evidence supporting the denial of his motion to suppress. Although this argument is not well developed, we briefly address the evidence supporting the trial court's order denying Barnes' motion to suppress as it related to Zelma's consent. Barnes'

principle attack[5] on the sufficiency of the evidence is that Zelma simply did not say the things attributed to her by Officer Forestal, and so our review of the evidence will be through that lens.

[20] Here, the trial court concluded that Zelma "answered the front door for law enforcement officers and they were allowed in the residence to search for Jeffrey Ramsey." Appellant's App., Vol. II at 56. The evidence supporting the trial court's conclusion was that Officer Forestal explained to Zelma when she answered the door that he was seeking Ramsey on an outstanding robbery warrant and asked if he was there. Zelma replied that Ramsey did not live there and that he was not there at that time. Officer Forestal wanted to confirm that Ramsey was not in the residence, so he asked Zelma if they could come in to verify that Ramsey was not inside. Zelma agreed, opened the door for the officers, and allowed them to pass.

[21] Once inside, Officer Forestal asked Zelma to have anyone else in the home come downstairs. Zelma called for Philamenia and Barnes, who both eventually came downstairs. Two officers assisting Officer Forestal went upstairs to look for Ramsey. Zelma did not tell the officers they could not go upstairs. Zelma never told the officers that they had to leave. Thus, Zelma

---

[5] Barnes raises two additional one-sentence arguments, citing to *Steagald v. United States*, 451 U.S. 204 (1981) and *Bumper v. North Carolina*, 391 U.S. 543 (1968). Appellant's Br. at 16. Barnes fails to develop these arguments with cogent reasoning or citations to the record, and, thus we do not address them. *See* Ind. Appellate Rule 46(A)(8)(a); *see also Smith v. State*, 822 N.E.2d 193, 203-04 (Ind. Ct. App. 2005) (holding that party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record), *trans. denied*.

expressly assented to the officers' entry into her home to search for Ramsey, she never limited the scope of that search, and she never told officers that they must stop searching. Zelma did call the other occupants of the home to come downstairs which was further evidence that she acquiesced to the officers' search of the upstairs of her home.

[22] In support of his argument that Zelma did not give consent, Barnes directs us to evidence that does not support the trial court's suppression order. This argument is unpersuasive given our standard of review. *McIlquham*, 10 N.E.3d at 511. The fact that it may have been uncontested that officers did not expressly ask to search upstairs and Zelma did not provide express consent to do so does not change the result here, as it was not necessary for Zelma to provide express consent for us to uphold the trial court's determination. *See Rush v. State*, 881 N.E.2d 46, 52 (Ind. Ct. App. 2008) (consent search upheld absent express consent to search where Rush allowed officers to enter home, never limited the scope of their search, and acquiesced in the search by accompanying officers through home). We conclude that the trial court's denial of Barnes' motion to suppress was supported by substantial probative evidence.

## II. The Arrest Warrant

[23] Barnes also contends that the trial court's suppression order must be reversed because the officers' entry was made pursuant to an invalid arrest warrant. Barnes' specific allegation is that the arrest warrant was invalid because it was

not signed by a judicial officer and, thus, should be deemed "nonexistent." Appellant's Br. at 17.

[24] However, in *Smith v. State*, 562 N.E.2d 428, 429-30 (Ind. Ct. App. 1990), we held that the signature of the judge issuing a search warrant is a ministerial act the lack of which is not fatal if the judge found the required probable cause to issue the warrant. Although *Smith* dealt with the validity of an unsigned search warrant, as opposed to an unsigned arrest warrant, we see no reason why the precedent of *Smith* would not apply equally to an arrest warrant, as both are issued after a judicial officer's finding of probable cause. *Compare* Ind. Code § 35-33-5-1(a) (search warrant requirements) *with* Ind. Code § 35-33-2-1(c) (arrest warrant requirements).

[25] Here, it is undisputed that the Ramsey arrest warrant was not signed by the issuing judicial officer. Second Supp. Ex. Vol., Vol. I at 4. However, the Warrant Sheet for the arrest warrant was admitted into evidence which showed that the judicial officer found that probable cause existed to arrest Ramsey for robbery. *Id*. at 3. This probable cause determination was signed by the issuing judicial officer, and the cause number on the Warrant Sheet matched that provided on the arrest warrant. *Id*. at 3-4. Because the evidence showed that the judicial officer who issued the arrest warrant had found probable cause for the arrest, the fact that the judge did not sign the arrest warrant itself did not render it invalid. *Smith*, 562 N.E.2d at 429.

Moreover, *Timmons v. State*, 723 N.E.2d 916 (Ind. Ct. App. 2000), *trans. denied*, relied upon by Barnes for his claim of error, Appellant's Br. at 17, is factually distinguishable. The telephonic arrest warrant in that case was issued in near total derogation of the statutory procedures and was not simply lacking a signature by the issuing judicial officer. *Timmons*, 723 N.E.2d at 920. Here, the officers' initial entry was made pursuant to a valid arrest warrant. Thus, we uphold the trial court's denial of Barnes' motions to suppress.

# Conclusion

Concluding that the trial court did not shift the burden of proof to Barnes to demonstrate lack of consent and that the officers' initial entry was made pursuant to a valid arrest warrant, we affirm.

Affirmed.

Najam, J., and Altice, J., concur.