## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 06 2019, 5:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dominique Morrison,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

February 6, 2019

Court of Appeals Case No.
18A-CR-1535

Appeal from the Marion Superior Court

The Honorable Peggy R. Hart, Magistrate

Trial Court Cause No.
49G16-1801-CM-2540

**Brown, Judge.**

[1] Dominique Morrison appeals his conviction for resisting law enforcement as a class A misdemeanor. Morrison raises one issue which we revise and restate as whether the trial court erred in admitting certain testimony. We affirm.

*Facts and Procedural History*

[2] At approximately 9:00 p.m. on January 19, 2018, Indianapolis Metropolitan Police Officer Monica Hodge was with a recruit officer stopped in or near a drug store parking lot when a vehicle pulled up behind them and began to flash its lights and honk. Julia Deubner exited the vehicle and went to Officer Hodge's door. Deubner was crying and yelling and told Officer Hodge that she was at a gas station across the street with her aunt when Morrison, her ex-boyfriend, showed up, pulled her out of the vehicle, and threw a rock at her aunt's car. Deubner provided Officer Hodge with Morrison's name and a physical description of him. Officer Christopher Houeshelp and Officer Aaron Laird arrived at Officer Hodge's location, Officer Hodge provided them with Morrison's description and location, and they drove away to look for him.

[3] About a minute later, Officer Houeshelp observed Morrison in an alley behind the gas station and then saw him as he was crossing a street. Officer Houeshelp and Officer Laird, who were dressed in full uniform and in a marked patrol vehicle, parked about ten yards from Morrison and opened their doors to exit the patrol vehicle. Morrison turned around, looked at them, hiked his pants up, and took off running. Officer Houeshelp and Officer Laird "yelled several times stop police." Transcript Volume II at 16. Morrison did not stop, and the

officers chased him for a couple of minutes but were unable to catch him. At about 2:30 a.m., Officer James Beliles conducted a traffic stop, and Morrison was one of the occupants in the vehicle and verbally identified himself. Officer Beliles, who had previously received a report that Morrison had run from police, had Morrison exit the vehicle and placed him in cuffs. Before Officer Beliles could question him, Morrison stated: "I already know what this is about. It's about that lying b---- . . . I didn't run from no one. I was sitting at Taco Bell and watched you guys go by." *Id*. at 24. Officer Beliles went to his vehicle and confirmed that Morrison was the person identified in the initial report, noted Morrison exactly matched the description given, and ultimately placed him under arrest.

[4] On January 23, 2018, the State charged Morrison with domestic battery and resisting law enforcement as class A misdemeanors. The State filed a motion to dismiss the domestic battery charge, and the court granted the motion. In June 2018, the court held a bench trial at which the State presented the testimony of Officer Hodge, Officer Houeshelp, and Officer Beliles. During Officer Hodge's testimony, the following exchange occurred:

> Q [Prosecutor]  When she ran up to your vehicle what happened?
>
> A [Officer Hodge]    She was crying and yelling. I asked her what happened. She said that she just -
>
> [Defense Counsel]:  Objection, Judge, to any statements that goes to her action.

[Prosecutor]: And Judge the State would not be using them to prove the truth of the matter, simply by the statements what she did next (inaudible)

The Court: Overruled as to why she took the action that she did.

A    So she was crying and yelling. So she just left the gas station which was diagonal from where we were at across the street, that her ex-boyfriend had been following her and harassing her. She was at the gas station with her aunt and he showed up and pulled her out of the vehicle and threw a rock at her aunt's car.

Q    Did she give you a description of the individual?

A    Yes, she did.

Q    Did she tell you his name?

A    Yes, she did.

Q    And what was his name?

A    Dominique Morrison.

Q    What description did she give you?

A    Black male, with a black jacket and a hoodie.

*Id*. at 8-9. The court found Morrison guilty of resisting law enforcement as a class A misdemeanor and sentenced him to 365 days with 291 days suspended.

### *Discussion*

[5]    Morrison asserts that the trial court abused its discretion in admitting Officer Hodge's testimony regarding Deubner's statements to her. The trial court has broad discretion to rule on the admissibility of evidence. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). We review its rulings for abuse of discretion and reverse only when admission is clearly against the logic and effect of the facts

and circumstances and the error affects a party's substantial rights. *Id.* In determining the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable effect on the fact finder. *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011). We will not reverse an error in the admission of evidence if the error was harmless. *Id.* at 1058. An improper admission is harmless if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.* at 1059. "In bench trials, we presume that the court disregarded inadmissible evidence and rendered its decision solely on the basis of relevant and probative evidence. Any harm from evidentiary error is lessened, if not completely annulled, when the trial is by the court sitting without a jury." *King v. State*, 985 N.E.2d 755, 757 (Ind. Ct. App. 2013) (citing *Berry v. State*, 725 N.E.2d 939, 943 (Ind. Ct. App. 2000)), *trans. denied*.

[6] Hearsay means a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. The Indiana Supreme Court has observed that "[w]hether a statement is hearsay . . . will most often hinge on the purpose for which it is offered" and "[o]ut-of-court statements made to law enforcement are non-hearsay if introduced primarily to explain why the investigation proceeded as it did." *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014) (citations omitted). In *Blount*, the Court stated:

Although course-of-investigation testimony may help prosecutors give the jury some context, it is often of little consequence to the ultimate determination of guilt or innocence. The core issue at trial is, of course, what the *defendant* did (or did not do), not why the *investigator* did (or did not do) something. Thus, course-of-investigation testimony is excluded from hearsay only for a limited purpose: to bridge gaps in the trial testimony that would otherwise substantially confuse or mislead the jury. The possibility the jury may wonder why police pursued a particular path does not, without more, make course-of-investigation testimony relevant. Indeed, such testimony is of little value absent a direct challenge to the legitimacy of the investigation.

* * * * *

Our concern is the danger of prejudice where reliance on the course-of-investigation exclusion is misplaced. . . . There is a risk the jury will rely upon the out-of-court assertion as substantive evidence of guilt—rather than for the limited purpose of explaining police investigation—and the defendant will have no chance to challenge that evidence through cross-examination.

* * * * *

The ultimate inquiry is: Was the out-of-court statement used primarily to show the truth of its content, constituting inadmissible hearsay, or merely to explain subsequent police action, excluded from hearsay? To answer this question, we turn to the three-part test we articulated in *Craig v. State:*

1. Does the testimony or written evidence describe an out-of-court statement asserting a fact susceptible of being true or false?

   If the statement contains no such assertion, it cannot be hearsay and the objection should be overruled. If the out-of-court statement does contain an assertion of fact, then the Court should consider the following before ruling:

2. What is the evidentiary purpose of the proffered statement?

> . . . . If the evidentiary purpose is to prove a fact asserted, and such purpose is not approved under Evid. R. 801(d), then the hearsay objection should be sustained, unless the statement fits an exception to the hearsay rule.
>
> If the proponent of the statement urges a purpose other than to prove a fact which is asserted, then the Court should consider the following before ruling:
>
> 3. Is the fact to be proved under the suggested purpose for the statement relevant to some issue in the case, and does any danger of prejudice outweigh its probative value?
>
> . . . . If the fact sought to be proved under the suggested non-hearsay purpose is not relevant, or it is relevant but its danger of unfair prejudice substantially outweighs its probative value, the hearsay objection should be sustained.
>
> 630 N.E.2d [207,] 211 [(Ind. 1994)].

22 N.E.3d at 565-567 (some internal quotation marks and citations omitted).

[7] Morrison argues that Deubner did not testify, that "without the hearsay, there were no gaps in trial testimony that would have substantially confused or misled the trial judge as trier of fact," and that he "did not directly challenge the legitimacy of the officers' investigation." Appellant's Brief at 9.

[8] The State responds that it "did not offer Officer Hodge's testimony about what Deubner reported to prove the truth of the matter asserted, namely that Morrison pulled Deubner out of a vehicle and threw a rock at Deubner's aunt's car," that "the truth of her accusations were entirely immaterial to the purpose for which this evidence was offered and admitted in Morrison's trial for resisting law enforcement," and that "Deubner's statements were relevant to

show that police received a report of criminal conduct in the vicinity and officers took immediate action to locate the suspect to further their investigation, regardless of whether that accusation was factually correct." Appellee's Brief at 9-10. It also argues that any error was harmless because Morrison's conviction is supported by independent evidence of guilt.

[9] The record reveals that the State did not offer Officer Hodge's testimony to prove that Morrison had been following and harassing Deubner or that he pulled her out of a vehicle and threw a rock at her aunt's car. Rather, the testimony regarding Deubner's statements to Officer Hodge was provided to offer the reason that the officers attempted to locate Morrison and ordered him to stop when he turned and took off running. We conclude that the challenged statements were not used primarily to show the truth of their content but to explain subsequent police action. Deubner's statements to Officer Hodge were not offered in evidence to prove the truth of the matter asserted. The risk that the trial court relied upon the out-of-court assertion as substantive evidence of Morrison's guilt of resisting law enforcement is minimal under these circumstances. The court as the trier of fact was able to consider Officer Hodge's testimony for the limited purpose for which it was admitted. The probative value of the challenged evidence is not substantially outweighed by a danger of unfair prejudice. Based upon the record, we cannot say that the trial court abused its discretion in admitting the challenged testimony of Officer Hodge. *See Bates-Smith v. State*, 108 N.E.3d 399, 405 (Ind. Ct. App. 2018) (holding an informant's statements to a detective were not offered for the truth

of the matter asserted but to show the reason the officers stopped the defendant's vehicle).

[10] Further, the record reveals that Officer Hodge testified that Deubner identified Morrison by name and provided a physical description of him. Officer Houeshelp identified Morrison in court and testified that Morrison was the person who ran from him. Officer Beliles testified that Morrison identified himself following a traffic stop and stated "I didn't run from no one." Transcript Volume II at 24. We conclude based upon our review of the evidence as set forth in the record that any alleged error in the admission of the challenged testimony was harmless in light of the other substantial independent evidence of Morrison's guilt of resisting law enforcement.

[11] For the foregoing reasons, we affirm Morrison's conviction.

[12] Affirmed.

Bailey, J., and Bradford, J., concur.